Yahia Ahmad **JOUDEH**, d/b/a **Lincoln Cut Rate Market**, Plaintiff/Appellant,

v.

**UNITED STATES of America,** Defendant/Appellee.

No. 84–1428.

United States Court of Appeals, Tenth Circuit.

Feb. 6, 1986.

Jules Ornstein, Denver, Colo., for plaintiff/appellant.

Nancy E. Rice (Robert N. Miller, U.S. Atty., and Jimmye S. Warren, Asst. U.S. Atty., on brief), Denver, Colo., for defendant-appellee.

Before BARRETT and ANDERSON, Circuit Judges, and COOK,* District Judge.

BARRETT, Circuit Judge.

Yahia Ahmad Joudeh, d/b/a Lincoln Cut Rate Market (hereinafter referred to as Joudeh) appeals from the district court's judgment, following a de novo trial to the court pursuant to 7 U.S.C. § 2023, upholding the administrative decision of the Secretary, Department of Agriculture, disqualifying Joudeh's retail grocery store from participating in the Food Stamp Program for a period of three years.

### Facts

The facts hereinafter recited are taken from the *de novo* trial record. Joudeh owned the Lincoln Cut Rate Market retail grocery store in Denver from 1979 until December, 1983. Some time prior to 1979, the store was licensed to participate in the Food Stamp Program. Joudeh acknowledged that he was an "absentee owner" of the store because he was working almost exclusively at the Golden Gate Market store as its manager. R., Vol. II, pp. 5, 6. Joudeh's brother, Omar, was the manager of the Lincoln Cut Rate Market store and his other brother, Mohammad, helped manage on a part-time basis. *Id.* at 5. Joudeh gave both of his brothers training in dealing with the Food Stamp Program. *Id.* at 6.

Between June 25, 1979, and December 21, 1979, Omar and Mohammad Joudeh purchased food stamps from third parties away from the premises of the store at a discount price and, unknown to their brother-owner, Omar and Mohammad redeemed about $4,500.00 worth of those food stamps through the store by deposit of the food stamps in the cash register, via food stamp deposit slips, for cash equivalent value. *Id.* at 9, 13–16. Both Omar and Mohammad were sentenced for trafficking in food stamps in violation of 7 U.S.C. § 2024(b). Omar was sentenced to six months, assessed a $2,500.00 fine and placed on a four and one-half year probation. Mohammad was fined $1,000.00 and placed on a five year probation. Joudeh fired both Omar and Mohammad after they were charged, which he testified was his first knowledge of their illegal activities. *Id.* at 12. However, Joudeh rehired both Omar and Mohammad after Omar's release from prison, and both continued to serve in their former positions of authority until the store was sold in 1983. *Id.* at 20, 21, 26, 27.

The store averaged sales of some $40,-000.00 to $42,000.00 monthly during the period Omar and Mohammad managed it, and of that amount $12,000.00 to $15,000.00 came from the Food Stamp Program. *Id.* at 11. Omar testified that Joudeh appeared at the store only occasionally. *Id.* at 13. Counsel for Joudeh referred to his client as an "absentee owner." *Id.* at 13. Omar stated that Joudeh came to the store sometimes once a week, other times three times a week and sometimes only once a month. *Id.* at 19.

Mr. Robert Higgenbotham, Chief of the Council upon Use and Redemption Section for the Mountain Plains Region, Department of Agriculture, testified that the violation which occurred at Lincoln Cut Rate Market, i.e., illegal redemption of food stamps worth some $4,532.00, amounted to a flagrant violation. He stated that of some 225 stores which had been disqual-

---

* The Honorable H. Dale Cook, Chief United States District Judge for the Northern District of Oklahoma, sitting by designation.

ified in cases he dealt with during the last four years, in dollar amount of food stamps illegally redeemed, the Lincoln Cut Rate Market violation was the most flagrant case. *Id.* at 31, 32.

On appeal, Joudeh contends that the district court erred in holding him, as the store owner, responsible for his manager's illegal conduct as the basis for upholding the three-year suspension imposed by the Secretary. Joudeh argues that the disqualification of his store is not warranted where the manager (Omar), with criminal intent and for his own advantage and to the disadvantage and detriment of the owner, illegally purchased food stamps and placed them (without knowledge of store owner) in the store cash register in exchange for cash. Joudeh relies almost exclusively upon this court's opinion in *Badwan v. United States*, 541 F.2d 1388 (10th Cir.1976).

### General Background—The Food Stamp Act of 1964

The Food Stamp Act of 1964, as amended, 7 U.S.C. §§ 2011–2029, established a Food Stamp Program designed to insure that the abundance of food in the United States should be utilized by cooperative efforts of the Federal Government, the various states and local governmental units to safeguard the health and well-being of Americans and to raise levels of nutrition among low-income families. *See,* 7 U.S.C. § 2011. The Secretary of Agriculture is authorized to administer the Food Stamp Program and to promulgate such regulations as he deems necessary for the effective and efficient administration of the program. The Secretary has designated the Food and Nutrition Service (FNS) of the Department as the agency to act on his behalf. The Act provides, *inter-alia:* for approval of retail food stores and wholesale food concerns wishing to be authorized to accept and redeem food stamps in order to effectuate the Act's purposes, 7 U.S.C. § 2018; for disqualification of previously approved stores or concerns if they violate the provisions of the Act or regulations issued pursuant thereto, 7 U.S.C. § 2021;

and for administrative review of the disqualification of a store, following which any aggrieved store or concern may obtain a trial *de novo* to determine the validity of the Secretary's action. 7 U.S.C. § 2023(a). In *Kulkin v. Bergland*, 626 F.2d 181 (1st Cir.1980), the court held that the Secretary's imposition of sanctions, such as the disqualification imposed in the instant case, or penalties should be upheld upon trial *de novo* unless the court finds that the Secretary's choice of sanction is unwarranted in law or without justification in fact. In *Wolf v. United States*, 662 F.2d 676 (10th Cir.1981), this court adopted the *Kulkin* standard. We there held that upon *de novo* judicial review, the court must determine whether the sanction imposed by the Secretary is arbitrary or capricious. *See also, Bowen v. Block*, 667 F.2d 445 (4th Cir.1982); *United States v. Collins*, 690 F.2d 670 (8th Cir.1982).

### The Badwan Case

In *Badwan v. United States, supra*, this court refused to uphold disqualification of the plaintiff-owner's retail store from participation in the Food Stamp Program, based upon the operating manager's illegal purchase of food stamps at a substantial discount from an undercover agent in the store and later placement of the food stamps in the cash register and withdrawal of cash at full value. We held that because the crime was actively concealed from the owner of the store who did not profit from the crime and who was not delict as a result of improper training, inadequate explanation, or negligent supervision of employees no agency inference was justified in imposing sanctions on the store owner. *Badwan* involved a single criminal action.

The significant factual difference between *Badwan* and the case at bar, in our view, is that there was a minimum of supervision and oversight of the store operations by Joudeh, and the criminal violations occurred *often* over a substantial period of time. Joudeh exercised virtually no control over inventory accounting at his store. In effect, for a period of about six months, Joudeh performed no functions of control,

management, oversight, or supervision at his store. Furthermore, at the time of the violations in the case at bar, there was in effect a valid regulation promulgated by the Secretary. 7 C.F.R. 278.6(a) enacted and effective January 1, 1979, provided:[1]

> For purposes of this action, unless otherwise noted, firm means the ownership or *management* of an authorized retail food store or wholesale food concern or *any person acting on behalf of the ownership or management.* (Emphasis added.)

The above regulation was enacted pursuant to 7 U.S.C. § 2021(a) which states in pertinent part:

> Any approved *retail store* [firm] ... may be disqualified for a specified period of time from further participation in the Food Stamp Program, or subjected to a civil penalty of up to $10,000.00 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this Act ...

Thus, under the above regulation, the unlawful actions of the *management* were attributable to the *retail store* on the same basis as unlawful acts of the *owner.*

The district court relied upon the above regulation in significant part in distinguishing this case from *Badwan.* The court's conclusions of law contain pertinent reasoning and analysis with which we agree:

> Certain regulations were adopted to effectuate 7 U.S.C. § 2021(a). Specifically, 7 C.F.R. § 278(e)(1) permits disqualification of a "firm" for three years if the firm has engaged in flagrant Food Stamp Program violations. Furthermore, effective January 1, 1979, 7 C.F.R. § 278(6)(a) provides that a firm "... means the ownership or management of an authorized retail food store or wholesale food concern or any person acting on behalf of the ownership or management ..."

Therefore, if either the ownership or the management of a retail food store violates the regulations, the "firm" has violated the regulations and may be disqualified. Disqualification of the firm does not require the store owner's involvement; in fact, numerous courts have held that an owner of a store does not have to be involved in the wrongdoing to be culpable. *See Kulkin v. Bergland,* 626 F.2d 181, 183 (1st Cir.1980); *Willy's Grocery v. United States,* 656 F.2d 24 (2nd Cir.1981), *cert. denied,* 454 U.S. 1148 [102 S.Ct. 1011, 71 L.Ed.2d 301] (1982); *JCB Super Markets, Inc. v. United States,* 530 F.2d 1119 (2nd Cir.1976); *PTF Enterprises, Inc. v. United States,* 558 F.Supp. 1317 (W.D.Mo.1983), *aff'd,* 716 F.2d 908 (5th Cir.1983). *See also, Save More of Gary, Inc. v. United States,* 442 F.2d 36 (7th Cir.1971), *cert. denied,* 404 U.S. 987 [92 S.Ct. 535, 30 L.Ed.2d 549] (1971).

In the instant case, Plaintiff maintains that his personal disqualification is contrary to the law as set forth in *Badwan v. United States of America,* 541 F.2d 1388 (10th Cir.1976).

The Court acknowledges that there are several factual similarities between this case and the situation presented in *Badwan v. United States of America, supra;* however, the Court is of the view that *Badwan* is not controlling in the instant case. Initially, the Court notes that 7 C.F.R. § 278(6)(a), which defines "firm" as including the management of a retail food store for purposes of disqualification from the Food Stamp Program, was adopted after the Tenth Circuit Court of Appeals decided *Badwan v. United States of America, supra.* Accordingly, the regulation cited above is controlling in the instant case notwithstanding the Court's decision in *Badwan v. United States of America, supra.* More significantly, however, the Tenth Circuit Court of Appeals specified that

---

**1.** We do not regard as significant the fact that the quoted language in the regulation was omitted in regulations promulgated in 1983, since

we view the language as a reasonable interpretation of, and not an enlargement upon, the statute itself.

the situation in *Badwan* "was not the result of ... negligent supervision of employees ..." 541 F.2d at 1391. In the instant case, as noted above, the Plaintiff was an absentee owner in that he often visited the store only once a week, and commonly visited the store as infrequently as once a month. Although the Plaintiff explained the requirements of the Food Stamp Program to his brothers, the Court is of the view that the Plaintiff had a duty to maintain a higher level of supervision over the redemption of food stamps at his store. This duty is especially evident in the instant case in light of the fact that food stamps accounted for approximately one-third of the sales of the Lincoln Cut Rate Market. Accordingly, the Court finds that the suspension in the instant case is not prohibited by the opinion of the Tenth Circuit Court of Appeals in *Badwan v. United States of America, supra.*

Plaintiff does not dispute that Omar Joudeh, the manager of the Lincoln Cut Rate Market, violated the regulations of the Food Stamp Program. Accordingly, given the additional findings of the Court discussed above, the Court is of the opinion that Defendant's disqualification of the Plaintiff was proper.

To the extent that Plaintiff also seeks to challenge the specific penalty imposed by the Defendant, the Court finds that the three-year disqualification should be upheld.

R., Vol. I, pp. 14–16.

Other circuits have ruled *contra* to *Badwan* based upon the provisions of 7 U.S.C. § 2021(a) only. In *Kulkin v. Bergland*, 626 F.2d 181 (1st Cir.1981), the court held that the personal non-involvement of the president of the store did not prevent the Secretary from disqualifying the store under 7 U.S.C. § 2021 (Supp. I 1977) from participating in the Food Stamp Program, even though the violation of the regulation was attributable to action of the cashier. The action was deemed to be that of the store. In *Willy's Grocery v. United States*, 656 F.2d 24 (2nd Cir.1981), *cert. denied*, 454 U.S. 1148 (1982), the court up-

held the Secretary's disqualification sanction of a retail store from participating in the Food Stamp Program based on criminal action of the husband of the store owner who pled guilty to discounting food stamps for cash because his actions were held to be considered store policy and the husband was part of store management. In *J.C.B. Super Markets, Inc. v. United States*, 530 F.2d 1119 (2nd Cir.1976), the court held that because the disqualification proviso authorized by the statute required finding that the "store" rather than any identified individual violated the provisions of the Food Stamp Act, the identity of the particular clerk who accepted the food stamps for non-food items was not critical to the Government's case. The court reasoned that because the clerk was acting within the scope of his employment for the benefit of his employer, the employer could not interpose the defense of the doctrine of respondeat superior; further, that if the mere fact that the clerk was not authorized to make illegal sales could exculpate the employer, it would be practically impossible to impose any penalties under the statute. *See also, Woodward v. United States*, 725 F.2d 1072 (6th Cir.1984). By the same token, if the owner of a retail grocery store properly advises his manager and employees about the program and provides training and thereafter substantially absents himself from the store and its operation-supervision, it would likewise be practically impossible to impose any sanctions on the *store* if Joudeh's argument prevailed.

We agree with the district court's analysis and conclusions. 7 C.F.R. § 278.6(a) was not in effect when the *Badwan* opinion was issued. In *Wyoming Hospital Ass'n v. Harris*, 727 F.2d 936, 939 (10th Cir.1984) we held that deference is to be accorded administrative regulations and that this court applies the "rational basis" standard to agency actions. We have also held that a regulation promulgated by an administrative agency charged with the administration of an Act has the force and effect of law if it is reasonably related to administrative enforcement and does not contravene

statutory provisions. *United States v. Barnard,* 255 F.2d 583 (10th Cir.1958); *Skelly Oil Co., et al. v. Phillips Petroleum Co.,* 174 F.2d 89 (10th Cir.1949). And in *Dimension Financial Corp. v. Bd. of Governors,* 744 F.2d 1402, 1409 (10th Cir.1984) we said: "[I]t is, of course, necessary that the regulatory authorities be able to change to meet new conditions arising within their sphere of authority *and* for a purpose or to accomplish a result within their authority."

In *Badwan, supra,* this court emphasized the fact that it was not for want of supervision by the store owner that the individual employee on one occasion purchased food stamps at a discount and placed them in the store's cash register for their face value in cash, all for the employee's personal gain and without knowledge of the owner or gain to the store. There is nothing in this record beyond Joudeh's testimony, that his store did not profit or gain by reason of Omar's managerial misconduct, nor is there evidence that Omar's conduct worked to Joudeh's disadvantage or detriment.

We hold that the district court correctly found that Joudeh, as the store owner, did not exercise sufficient supervision of his employees and that he was negligent in that respect. Further, we agree with the district court's conclusion that by virtue of the controlling regulation the illegal conduct of the store *management* was that of the store.

WE AFFIRM.