**William C. HASKELL, Jr., d/b/a Haskell Brothers Grocery, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.**

**Civ. A. No. 90–2004–S.**

United States District Court, D. Kansas.

July 13, 1990.

William C. Haskell, Jr., Kansas City, Kan., pro se.

Lee Thompson, U.S. Atty., Karen Arnold–Burger, Asst. U.S. Atty., Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on cross-motions for summary judgment. In this action, plaintiff seeks a *de novo* review, pursuant to the Food Stamp Act, 7 U.S.C. § 2023, and the applicable regulations, 7 C.F.R. § 279.10, of the decision of the United States Department of Agriculture, Food and Nutrition Service (hereinafter, "USDA"), which permanently disqualified plaintiff William C. Haskell, Jr. d/b/a Haskell Brothers Grocery, from participation in the USDA Food Stamp Program. Plaintiff has also submitted a "motion to suppress" statements attributable to an investigative aide contained in defendant's report of its investigation of food stamp trafficking at plaintiff's grocery store.

*Plaintiff's Motion to Suppress*

In his motion, plaintiff asks the court to exclude "any and all representations attributable to the 'Investigative Aide' herein which he presumes was/is/will be used as evidentiary matters in relation to the review of the above-captioned matter." The court will consider plaintiff's motion as one to strike the investigative aide's statements attached in support of defendant's motion for summary judgment.

Rule 56(e) of the Federal Rules of Civil Procedure provides, in pertinent part, that affidavits submitted in connection with a summary judgment motion "shall set forth such facts as would be admissible in evidence." Although plaintiff lists eight separate reasons why statements of the investigative aide should be excluded, plaintiff's basic argument appears to be that these statements are inadmissable as hearsay. The investigative aide whose statements are contained in the investigative report, pages 3–35, is now deceased, and therefore, unavailable to testify concerning the matters contained in the report relative to plaintiff's disqualification.

In the present case, the investigative report prepared at or near the time of the events described contains hearsay, i.e., written statements made by an investigative aide on the approximate dates the vio-

lations occurred and in the course of the USDA's investigation of plaintiff's store. The report is also certified by sworn affidavits of the federal investigator who supervised the investigation and witnessed several of the transactions. The court finds that the statements of the investigative aide as contained in the report accompanying defendant's summary judgment motion are admissable within exceptions to the hearsay rule, notably the business record exception, Fed.R.Evid. 803(6), or the public records exception, Fed.R.Evid. 803(8). Courts have so held. *Abdel v. United States,* 670 F.2d 73, 76 (7th Cir.1982) (transaction reports of USDA employees completed after each compliance investigation visit held admissable as business records in de novo proceeding to review a supermarket's disqualification from the food stamp program); *see Hotel Employees–Hotel Ass'n Pension Fund v. Timperio,* 622 F.Supp. 606, 608 (S.D.Fla.1985) (citations omitted) (records generated in regular course of federal agency law enforcement investigations admissable under public records exception). Therefore, plaintiff's motion to suppress or to strike the statements of the investigative aide will be denied.

*Plaintiff's and Defendant's Cross–Motions for Summary Judgment*

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of material fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing an absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is

an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). Summary judgment has been held to be appropriate on *de novo* judicial review of a disqualification of a retail food store from participating in the food stamp program if no genuine issue of material fact exists. *See J.C.B. Super Markets, Inc. v. United States,* 57 F.R.D. 500, 503 (D.N.Y.1972).

For purposes of the parties' cross-motions for summary judgment, the court finds the following facts to be uncontested.[1] Haskell Brothers Grocery was initially authorized by the Independence, Missouri field office of the Food and Nutrition Service (FNS) to participate as a retailer in the food stamp program on November 28, 1978. The firm's initial application form dated October 24, 1978, identifies plaintiff, William C. Haskell, Jr., as the owner of the firm. A subsequent application form dated March 19, 1979, identifies Herman D. Haskell, plaintiff's brother, as co-owner. On September 1, 1979, Muriel Haskell, plaintiff's sister, replaced Herman Haskell as co-owner of the firm. No subsequent changes of ownership have been reported to the FNS.

---

1. The court acknowledges that plaintiff is now proceeding in this matter *pro se,* and that *pro se* pleadings are viewed with substantial latitude. The court finds, however, that plaintiff's motion for summary judgment and his response to defendant's motion fail to set forth any facts

which are in controversy. Because plaintiff fails to controvert any of the facts contained in defendant's statement of facts (or to put any facts in issue in his own pleading), defendant's statement of facts is deemed admitted. D.Kan. 206(c).

Following the store's authorization to accept food stamps in November, 1978, FNS personnel conducted educational/compliance visits as follows: April 17, 1979—educational visit with William C. Haskell, Jr., co-owner, and November 13, 1979—compliance visit with William C. Haskell, Jr. On April 11, 1980, the Wichita, Kansas field office of the Inspector General submitted a request for an investigation of the plaintiff's store to determine the cause of the firm's statistically excessive food stamp coupon redemptions. The USDA Office of Inspector General's investigation report released January 5, 1981, disclosed serious violations of the food stamp program by store employees, including Herman Haskell, plaintiff's brother, and William Haskell, Sr., plaintiff's father, including the acceptance of $695 in food stamps in exchange for $241 in cash and two ounces of marijuana. Herman Haskell and William Haskell, Sr. were charged criminally and entered pleas of guilty. In addition, FNS issued a one-year disqualification notice to the firm on October 16, 1981. This was later changed to a civil money penalty, which plaintiff's store paid.

Following FNS's processing of the above-referenced investigation, several visits to plaintiff's store were held including August 24, 1982 (educational visit with Muriel Haskell, co-owner), January 12, 1983 (compliance visit with Muriel Haskell), February 22, 1984 and November 14, 1984 (educational visits with Wayne Haskell), and July 15, 1985 (educational visit with William Haskell, Jr., co-owner). In February 1986, another investigation of plaintiff's store was requested due to the fact that the stock of eligible food items did not support the volume of food stamp coupon redemptions. On October 26, 1986, William C. Haskell, Jr., co-owner and plaintiff herein, accepted food stamp coupons for non-eligible items, i.e., a pack of cigarettes. On November 4, 1986, William C. Haskell, Jr., who was working behind the counter checking out customers at the time, again accepted food stamp coupons for noneligible items, i.e., a pack of cigarettes.

On November 7, 1986, Muriel Haskell, plaintiff's sister and listed co-owner of plaintiff's store, while on store premises working behind the counter, accepted food stamp coupons for non-eligible items, i.e., five packs of cigarettes, and also exchanged $150 worth of food stamp coupons for $75 cash. On November 13, 1986, Herman Haskell, plaintiff's brother, while working behind the counter of the store, arranged a food stamp for cash transaction which later occurred at Muriel Haskell's home. On November 18, 1986, again at the home of Muriel Haskell, Bryant Haskell, plaintiff's brother, purchased $150 worth of food stamps for Muriel Haskell for $75 cash. On December 1, 1986, at Muriel Haskell's home, Grace Haskell, plaintiff's sister, in the presence of Muriel and Bryant Haskell, purchased $300 worth of food stamps for $150 cash. On December 2, 1986, at Muriel Haskell's home, Muriel Haskell bought $350 worth of food stamps for $150.

On December 8, 1986, at Haskell Brothers Grocery, Muriel Haskell, co-owner, bought $1,200 worth of food stamps for 82.6 grams of marijuana. Muriel Haskell was working in the store cancelling food stamp coupons at the time of the purchase. On December 15, 1986, at Haskell Brothers Grocery, Bryant Haskell bought $1,200 worth of food stamps for 200 grams of marijuana. This purchase was arranged by Muriel Haskell. On January 7, 1987, at Welborn Park, a person identified as Muriel Haskell's cousin, Richard "Ricky" Clark, purchased $1,200 in food stamp coupons for one pound of marijuana from USDA Special Agent Raul Guerrero. Clark indicated that he was acting as an agent for Muriel and Grace Haskell. On January 14, 1987, at Haskell Brothers Grocery, Grace Haskell purchased $700 worth of food stamps for 10 ounces of marijuana. On or about October 2, 1989, after a criminal process which resulted in the dismissal by the government of grand jury indictments against Muriel Haskell, Bryant Haskell and Grace Haskell and after an administrative process, the Administrative Review Officer notified plaintiff of his decision sustaining the permanent disqualification of Haskell Brothers effective Novem-

ber 1, 1989. This appeal was "lodged" on November 1, 1989, and filed on January 2, 1990.

The Food Stamp Act of 1964, as amended, 7 U.S.C. §§ 2011, *et seq.*, [hereinafter, "the Act"], established the food stamp program. The purpose of the federal food stamp program is to alleviate hunger and malnutrition among low-income households. 7 U.S.C. § 2011; *Dean v. Butz*, 428 F.Supp. 477, 479 (D.Haw.1977). Under the food stamp program, retail food stores, upon application, may be authorized to accept and redeem food stamp coupons. 7 U.S.C. § 2018. The Act authorizes the Secretary of Agriculture to promulgate regulations to effectuate the efficient administration of the Food Stamp Program. 7 U.S.C. § 2013(c).

The regulations prohibit the acceptance of food stamp coupons for the purchase of ineligible non-food items or the exchange of food stamp coupons for cash. 7 C.F.R. § 278.2(a). Stores that violate the regulations are subject to penalties under 7 U.S.C. § 2021 and 7 C.F.R. § 278.6(e). Under section 2021(a), a participating retail store "may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty ... if the Secretary determines that disqualification would cause hardship to food stamp households...." Section 2021(b)(3) provides that disqualification from participation in the food stamp program "shall be" permanent on "the first occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store...." "Trafficking" is defined at 7 C.F.R. § 271.2 as the "buying or selling of coupons for cash." Under USDA regulations, the alternate penalty of a monetary fine is only available if the disqualified store submits substantial evidence demonstrating "that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program." 7 C.F.R. § 278.6(i).

 Under the Food Stamp Act and the regulations thereto, a firm aggrieved by the decision of a Food Stamp Review Officer may obtain judicial review of that decision by filing a complaint in the United States District Court. This review action "shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a). Thus, the court is not bound by the administrative record. *Redmond v. United States*, 507 F.2d 1007, 1011 (5th Cir.1975). Plaintiff, however, has the burden of proving that he is entitled to relief from the determination of disqualification and to do so must establish the invalidity of the agency action by a preponderance of the evidence. *Id.* It is well established in this circuit that the USDA's imposition of sanctions should be upheld on *de novo* review unless the court finds that the Secretary's choice of sanction is arbitrary and capricious. *Joudeh v. United States*, 783 F.2d 176, 178 (10th Cir. 1986); *Wolf v. United States*, 662 F.2d 676, 678 (10th Cir.1981).

 Plaintiff contends that the USDA decision to permanently disqualify him from participation in the food stamp program is invalid for several reasons. First, plaintiff appears to dispute the admissibility of USDA's evidence regarding the eleven different transactions in which trafficking in food stamps occurred. For the reasons stated in connection with plaintiff's motion to suppress, the court finds that the evidence of trafficking contained in the USDA's investigative report is admissible within either the business record or public record exception to the hearsay rule. *See* Fed.R.Evid. 803(6), 803(8). The court further finds that the uncontroverted evidence clearly shows that food stamp regulations were violated when plaintiff's employees and relatives accepted food stamps in exchange for cash and marijuana; on two occasions, plaintiff himself also committed the less serious violation of accepting food stamps for cigarettes, ineligible non-food items under the Act.

 Plaintiff contends that he should not be sanctioned for the violative transactions committed by his relatives who he alleges were not regularly involved in the

operation of the store at the time of the investigation. He argues that the transactions of exchanging food stamps for cash and marijuana which led to the store's permanent disqualification are not properly attributable to either the store or himself as the owner. This argument was discussed and rejected in a recent opinion by Chief Justice O'Connor of this District, *Smith v. USDA*, No. 85–2476–0 (D.Kan., *unpublished*, Aug. 5, 1987). In *Smith*, the disqualification was based on transactions occurring within a one-week period in which a USDA investigator, posing as a food stamp recipient, was able to purchase several ineligible non-food items and, on two occasions, sell food stamp coupons to the person working at the store for 75% of their face value. At the time the violative transactions occurred, the plaintiff co-owners of the store were on vacation and had left the store to be operated by friends.

In upholding the USDA's sanctioning of the store, Judge O'Connor stated his reasoning as follows:

> [i]t is clear in this circuit that an owner's personal non-involvement in the violations does not prevent his store's disqualification. *Joudeh v. United States*, 783 F.2d 176, 179 (10th Cir.1986); *Wolf v. United States*, 662 F.2d 676, 678 (10th Cir.1981). *Accord Kulkin v. Bergland*, 626 F.2d 181, 183 (1st Cir.1980). Therefore, the plaintiffs' lack of personal involvement does not insulate them from an appropriate sanction. Plaintiffs had a clear duty to ensure that the person entrusted with the operation of their store was aware of and complied with the food stamp regulations. This duty is even greater on store owners, such as the plaintiffs, when a large percentage of their business is with food stamp recipients. *See, e.g., Joudeh v. United States*, 783 F.2d at 180.... The plaintiffs must ultimately bear the responsibility for their own negligent supervision and training. *Joudeh v. United States*, 783 F.2d at 179; *Wolf v. United States*, 662 F.2d at 678.

This court finds Judge O'Connor's reasoning as expressed in *Smith* persuasive. In this case, plaintiff, as a store owner, had a clear duty to see that food stamp regulations were not violated and was, at the very least, negligent in this regard in his supervision and training of persons involved in the operation of the store. *See Joudeh*, 783 F.2d at 179–80 (sanctions properly imposed on store where owner/manager's negligent supervision of employees allowed violations to occur). It must also be noted that one of the primary persons involved in the trafficking, Muriel Haskell, was a co-owner of the store; thus, her actions are clearly attributable to the store itself. Further, that the violations occurred in eleven different transactions over a three-month period of time (particularly when viewed in light of the store's previous sanction for similar trafficking activity and the store's statistically high redemption of food stamps which led to the investigation) prove that the violations for which the store was sanctioned were not just isolated incidents and support the conclusion that plaintiff was negligent in allowing such activities to occur. Thus, this case is similar to *Joudeh* and clearly distinguishable from *Badwan v. United States*, 541 F.2d 1388 (10th Cir.1976), in which the Tenth Circuit reversed a disqualification based on the single criminal act of a manager who actively concealed his conduct from the store owner, who was not found to be negligent in his supervision or operation of the store.

The court further finds that upholding the validity of the permanent disqualification of the store in this case is consistent with sound public policy. To find that a store could not be sanctioned absent proof that a store owner personally participated in or knew of the violative transactions would be contrary to the public interest in seeing that the food stamp program is enforced according to law and that the program's purpose of providing nutrition to low-income families is furthered. Thus, the court finds plaintiff's argument that he cannot be sanctioned for violations committed by his employees and relatives to be without merit. *Accord J.C.B. Super Markets, Inc. v. United States*, 530 F.2d 1119 (2d Cir.1976); *Four Star Grocery, Inc. v.*

*United States,* 607 F.Supp. 1375 (S.D.N.Y. 1985); *American Community Stores, Inc. v. United States,* 579 F.Supp. 1164 (D.Neb. 1983); *Marbro Foods, Inc. v. United States,* 293 F.Supp. 754 (N.D.Ill.1968).

■ The court also rejects plaintiff's argument that he cannot be disqualified without prior warning since, under the regulations governing permanent disqualification for trafficking in food stamp coupons, no prior warning is required. *See* 7 C.F.R. § 278.6(e)(1)(i); *cf.* 7 C.F.R. § 278.6(e)(2)–(5). Plaintiff also contends that he has not been afforded procedural due process. Assuming that plaintiff does have a property interest in further participation in the food stamp program, *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the question becomes how much process is required. In this case, it is undisputed that plaintiff received notice of the impending disqualification and an opportunity to be heard, i.e., submit additional information to the review officer. Plaintiff received and replied to a charge letter specifying the violations. He later received and responded to a letter from the FNS, informing him of the store's permanent suspension from the food stamp program and advising him of his appeal rights. Plaintiff was further notified that his request for review of the determination had been granted by Larry Rose, the Administrative Review Officer, and plaintiff was invited to submit further information in support of his position. Plaintiff then received a letter from Larry Rose stating that, upon review of the record, the disqualification would be confirmed, to become effective 30 days after receipt of the letter. In the context of the administrative decision, plaintiff was not given a full evidentiary hearing. Courts, however, have held that the Act's provision for judicial review satisfies due process requirements. *See Cross v. United States,* 512 F.2d 1212, 1217–19 (4th Cir.1975); *Turnage v. United States,* 639 F.Supp. 228, 234 (E.D.N.C.1986). Therefore, the court finds plaintiff's procedural due process argument to be without merit.

■ The remaining issue before the court is whether the USDA's imposed sanction of permanent disqualification was arbitrary and capricious. To be considered arbitrary and capricious, the USDA's decision imposing a sanction for violations of food stamp program regulations must have been unwarranted in law or without justification in fact. *See Ali Hoa Supermarket, Inc. v. United States,* 657 F.Supp. 1207, 1208 (S.D. N.Y.1987). Under Section 2021(b)(3) of Title VII, United States Code, the Secretary is required to permanently disqualify a store on the first instance of violating regulations prohibiting trafficking in food stamp coupons. Based upon the uncontroverted evidence of food stamp trafficking in this case, it is clear that the USDA's decision to permanently disqualify plaintiff's firm from further participation in the food stamp program was not arbitrary and capricious, but rather supported by substantial evidence and the Food Stamp Act and regulations thereto.

Under USDA regulations, the civil monetary penalty in a case of permanent disqualification is only available if a firm establishes by substantial evidence each of the following criteria:

*Criterion 1.* The firm shall have developed an effective compliance policy as specified in 278.6(i)(1); and

*Criterion 2.* The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred *prior* to the occurrence of violations cited in the charge letter sent to the firm; and

*Criterion 3.* The firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2); and

*Criterion 4.* Neither firm ownership nor management were aware of, approved, benefitted from, or were in any way involved in the conduct or approval of trafficking violations.

7 C.F.R. § 278.6(i). In this case, the agency found that plaintiff had failed to submit evidence of a compliance program as required by 7 C.F.R. § 278.6(i); thus, the agency found that plaintiff was not eligible for the civil monetary penalty in lieu of

permanent disqualification. *See* Defendant's Response to Plaintiff's Motion for Summary Judgment, Exh. A at 15. Upon review of the record and because plaintiff has not presented the required evidence to this court in this proceeding, the court cannot find that the decision to deny plaintiff the opportunity to pay a civil monetary penalty rather than be permanently disqualified from participation in the food stamp program was arbitrary and capricious. Rather, the court does find that the agency's action was supported by the uncontroverted facts and the applicable regulations. Therefore, the decision to impose permanent disqualification as a sanction must be found valid. Because the court finds that no genuine issues of material fact exist in this case and that defendant is entitled to judgment as a matter of law, the court will grant defendant's motion for summary judgment. Accordingly, plaintiff's motion for summary judgment will be denied.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion to suppress is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.