**Bishara WEHAB, d/b/a Daldas Grocery, Plaintiff,**

v.

**Clayton YEUTTER, Secretary of the United States Department of Agriculture, et al., Defendants.**

**No. C–90–1043–VRW.**

United States District Court, N.D. California.

Aug. 6, 1990.

Robert M. Teets, Jr., San Francisco, Cal., for plaintiff.

William T. McGivern, Jr., U.S. Atty., Stephen L. Schirle, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## ORDER

WALKER, District Judge.

### I. BACKGROUND.

Plaintiff brought this action pursuant to 7 U.S.C. § 2023(a) seeking declaratory and injunctive relief from the decision of the Food and Nutrition Service ("FNS") to disqualify his store, Daldas Grocery, from accepting food stamps for a three-year period for violations of the food stamp program regulations.[1] Plaintiff's application for a stay of the penalty, filed simultaneously with the complaint, was denied after a hearing on April 18, 1990. Currently before the court are the parties' cross-motions for summary judgment, which were taken under submission after a hearing on June 29, 1990.

Plaintiff's motion asks this court to determine (1) that the Food and Nutrition Service violated its own regulations in investigating and sanctioning Daldas Grocery and (2) that the three-year disqualification imposed is arbitrary and capricious. The Government, in turn, seeks summary judgment that Daldas Grocery did violate program regulations and that the sanction imposed is appropriate.[2]

### II. STANDARD OF REVIEW.

The statutory authority for judicial review of an administrative action provides, in part, "The suit in the United States district court ... shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a) (1988). District courts in the Ninth Circuit are to apply a bifurcated standard of re-

---

1. After several investigations, the FNS determined that Daldas Grocery had sold ineligible items such as insect killer, air deodorizer, toilet cleanser, beer, and cigarettes for food stamps in violation of the Food Stamp Act, 7 U.S.C. § 2011 *et seq.* and the regulations promulgated thereunder, 7 C.F.R. Parts 278 and 279. Consequently, the FNS disqualified the store from accepting food stamps for three years under 7 C.F.R. § 278.6(e)(3).

2. Although plaintiff named Clayton Yeutter, Secretary of the United States Department of Agriculture, the Food and Nutrition Service, and ten unidentified defendants, the only proper defendant is the United States. 7 U.S.C. § 2023(a). The court will deem the action so brought.

view in proceedings under this section. "Whereas the FNS finding that a firm violated the Food Stamp Act is reviewed de novo, review of the sanction imposed by the FNS is governed by the arbitrary and capricious standard." *Wong v. United States*, 859 F.2d 129, 132 (9th Cir.1988).

## III. THE FNS ADMINISTRATIVE RECORD.

The administrative record ("*AR*") reveals the following. The application of Daldas (also identified as "Daldus") Grocery to participate in the food stamp program was authorized on January 19, 1983. *AR 132.* On June 3, 1983, FNS representative Betty Carey visited the store because it was "statistically excessive" in its rate of food stamp redemptions. Although plaintiff "stated that no violations were occurring in his store," Ms. Carey "warned [him] that he should take special care to prevent violations because they could result in disqualification." The store was to be monitored for 90 days because of its redemption rate, location and the receipt of "an anonymous telephone call suggest[ing] the subject firm is trafficking in food stamps." *AR 129–132.* B. Earl Daniels, officer in charge of the San Francisco field office, then sent a letter dated June 6, 1983 which stated: "You should take special care to prevent violations because they may lead to your being disqualified from the Food Stamp Program." *AR 128.*

On October 20, 1983, in response to an "anonymous telephone caller alleg[ing] the subject firm is trafficking in food stamps," Mr. Daniels requested an investigation of Daldas Grocery. *AR 126–127.* On February 27, 1984, after an investigation involving two visits to the store during which clerks refused to sell ineligible items (toilet paper, detergent, bleach, soap, etc.) for

food stamps, a negative compliance review was filed and the case was closed. *AR 122–123.*

Following another anonymous telephone call on June 7, 1984 claiming that Daldas Grocery bought food stamps at a discount, *AR 121*, and because of continued statistically excessive redemptions, Ms. Carey visited Daldas Grocery on June 8, 1984. Plaintiff again denied that violations took place. Ms. Carey warned him of the potential for disqualification and ordered monitoring for 90 days. *AR 117–119.* Mr. Daniels sent another letter to plaintiff on June 11, 1984, which contained a clear warning.[3] *AR 116.*

On August 7, 1984, an anonymous caller telephoned Ms. Carey and claimed that Daldas Grocery buys $65 books of food stamps for $30–35 cash. *AR 115.* Mr. Daniels requested an investigation, and after a two-visit investigation which proved negative, the case was again closed on January 15, 1985. *AR 109–110.*

A different FNS representative, Nicanor Lozada, visited plaintiff's store on November 18, 1985 because of continued statistically excessive redemptions. *AR 106–107.* Mr. Daniels sent a follow-up letter on November 22 containing the same warning as the June 11, 1984 letter. *AR 105.*

On April 23, 1986, because "it is believed ineligible items are being sold for food stamps and/or trafficking is occurring at the subject store," Mr. Daniels requested another investigation. *AR 103–104.* After two visits by Sharon Johnston, another negative compliance review was filed on July 9, 1986 and the case was closed. *AR 99.*

The FNS then received a flurry of unsigned written accusations against Daldas Grocery, on June 23,[4] July 21[5] and October

---

3. The letter stated: "This is a *WARNING* from the Food and Nutrition Service, United States Department of Agriculture, that if you are found to be in violation of the regulations you may lose your authorization *to participate in the* Food Stamp Program six months to permanently.... Your absence from the store does not reduce or dismiss responsibility for violations committed by your employees."

4. Sir:

   For your information the Daldas Grocery Store at the corners of Eddy & Taylor Sts is buying food stamps outright from his Customers at half Price.

5. Sir:

   Daldas Grocery, Corner of Eddy & Taylor Sts. is buying Food Stamps from his Customers at

5, 1987.[6] As a result, Mr. Lozada visited the store on October 16, 1987, and Mr. Daniels sent a follow-up letter on October 20 containing the same warning as the previous letters. *AR 91.*

An "anonymous Whistleblower Complaint" alleging that plaintiff "sends his employees to FS issuance of by FS's from recipients as they leave the office" resulted in Mr. Daniels' requesting another investigation on August 25, 1988. *AR 87–88.* Shortly thereafter, two identical written complaints were received, both on September 19, 1988.[7] This investigation, in contrast to the others, disclosed prohibited transactions.[8] Other anonymous complaints were received: a letter dated March 20, 1989,[9] *AR 55–56,* and a "hotline complaint" alleging that the store violates the rules with "reckless abandon." *AR 54.*

The upshot was a letter to plaintiff dated November 29, 1989 charging Daldas Grocery with six violations of 7 C.F.R. § 278.2(a),[10] and asking plaintiff to reply within ten days of receipt of the letter to contest the charges. *AR 44–46.* Robert Anderson, a Food Program Specialist in the San Francisco Field Office, recommended to Mr. Daniels a three-year period of disqualification. *AR 40.*[11] After no reply to the November 29 letter was received, Mr. Daniels sent plaintiff a letter dated December 12 assessing a penalty of three years

---

the rate of ½ Price. $80.00 book for $40.00. This is a fact.
You might be interested to know this!

**6.** To whom it may concern:
This is to advise you that the "Daldas Grocery" at the Corner of Eddy & Taylor Sts. is buying food Coupons from his Customers. The Other method he is using is through his Credit business, especially to his Cuban Customers. He sell them Cigarettes & [illegible] on Credit Then They pay him with food Coupons, which he takes from Them At half of The face Value. I almost became one of his Customers.
This is a fact, Confirmed and known. It is an Open Secret in The Tenderloin.
As a taxpayer I report this to you only!!!

**7.** The letters, the text of which follows, differ only in that one was dated (September 14, 1988) and written on lined paper while the other was undated and written on plain paper.
To whom it may Concern:
Sir,
This is to inform you the the [sic] "Daldas Grocery" at the Corners of Taylor and Eddy Sts. is accepting "Food Stamps" or Coupons from his Customers in Payment for Beer & Wine. Also His Customers Pay their Bills with Food Coupons. This store owner also buys the Food Coupons right out at half price.
A Similar letter had been mailed to the Agriculture Dept. in Washington D.C. I have personally witnessed these transactions as a customer.

**8.** On September 28, ineligible items (glass cleaner, detergent, bleach, and napkins) were sold for food stamps. *AR 65.* On October 24, ineligible items (glue, mouthwash, air deodorizer, and a notebook) were sold for food stamps. In addition, $1.31 in cash change, which exceeded the limit of $0.99, was returned. *AR 68.* On December 6, ineligible items (breath freshener, mouse killer, a light bulb, air freshener, and "moth blok") were sold for food stamps. *AR 71.*

On December 15, ineligible items (malt liquor, a "plunger w/stick," air deodorizer, toilet bowl cleaner, and scouring pads) were sold for food stamps. *AR 74.* On December 19, ineligible items (cigarettes, a can opener, after shave, an extension cord, and a cosmetic product) were sold for food stamps. *AR 77.* On January 6, 1989, an attempt to purchase non-food items with food stamps was rebuffed. *AR 81.* The first two transactions were carried out by Ida L. Tolliver under the supervision of investigator Sharon Johnston, while the latter four were carried out by Amalia D. Guerrero, also under Ms. Johnston's supervision.

**9.** to whom it may concern:
I am a very Good Customer of the Daldas Grocery, at Eddy & taylor St. The owner Gives me Credit. I pay him once a Month when I get my Food Stamp I only buy Cigaretts & Wine on Credit. The owner takes the Food Stamps to Pay my Bill I saw him take Food Stamps From other people For Everything They buy specially Cigarettes & Wine! I thought you would be interested to know.

**10.** The charges are actually five violations of 7 C.F.R. § 278.2(a) and one of 7 C.F.R. § 278.2(d) (giving of more than 99 cents cash change in a food stamp transaction).

**11.** The justification for this penalty was as follows:
There were five clearly violative transactions without comment which were followed by a complete refusal by one clerk. Major inelibles were sold in two transactions. The identities of the employees who violated were not established, but the evidence shows that two or more clerks were involved in the violative transactions. The owner had been previously warned about the possibility of violations and of the possible consequences. The evidence shows that such actions represent the firm's practice of selling common ineligible items.

disqualification from the food stamp program. *AR 34–36.* Plaintiff made a timely request for administrative review of the penalty. On March 15, 1990, Franklin J. Martin, the administrative review officer, wrote a letter informing plaintiff of his decision to sustain the penalty imposed by the San Francisco Field Office. *AR 6–9.* Accordingly, the disqualification was to go into effect thirty days from receipt of the letter, or April 18, 1990. *AR 2.* On April 9, 1990, plaintiff filed the complaint in this action.

## IV. ANALYSIS.

### A. *Did the Alleged Violations Actually Occur?*

Daldas Grocery is charged with violating Food Stamp Program regulations 7 C.F.R. § 278.2(a) and (d), which provide, respectively, "Coupons may be accepted by an authorized retail food store ... only in exchange for eligible food. * * * Coupons may not be accepted in payment of interest on loans or for any other nonfood use," and "At no time may cash change in excess of 99 cents be returned in a coupon transaction." In order to establish violations of these regulations, therefore, the Government must show by admissible evidence that plaintiff is an authorized retail store, that food stamp coupons were accepted by plaintiff as payment for ineligible items, and that cash change in excess of 99 cents was given by plaintiff. The Government has submitted a copy of the administrative record, properly authenticated by Mr. Daniels as custodian thereof, to show that such violations did in fact occur.

■ Plaintiff contends that whether the alleged violations actually occurred is not an issue amenable to resolution on summary judgment because the four individuals resembling the descriptions given by the FNS investigators of the clerks involved in violative transactions have submitted declarations denying any recollection of the alleged incidents and purchases. The court has reviewed all of the declarations submitted by plaintiff and notes the following.

Richard T. Geng states: "I may have let a customer or two buy somethings they should not have been able to purchase with [food stamps]. * * * I simply cannot believe that [plaintiff] would ever take food coupons for ineligible items much less give back more than a dollar in change." *Geng Decl.* ¶¶ 17, 20 (Exh. E to Plaintiff's Motion for Summary Judgment). Josef A. Lodkey states: "I have never witnessed any abuse by [plaintiff] of accepting food stamps for cash, liquor or other ineligible things." *Lodkey Decl.* ¶ 3 (Exh. H). Teresa Van Dolah states: "I have never seen anything illegal going on in the store by Bobby and his brothers. They simply don't tolerate it. * * * I have seen people in the Daldas Grocery trying to sell the Wehab brothers their food stamps and be refused. This store is always on the up and up or else I wouldn't shop there." *Van Dolah Decl.* ¶¶ 10–11 (Exh. K). Plaintiff's brother Edward Wehab states, "[T]he truth is that I do not remember any of the sales [the FNS investigators] describe. * * * If these women did in fact come into Daldas Grocery and bought things which were not allowed while I was working on the cash register, the mistake is mine." *E. Wehab Decl.* ¶¶ 11–12 (Exh. L). Plaintiff's other brother Milan Wehab states: "I could have made a mistake but I don't remember doing so and I certainly never intended to allow anyone break the food stamp law." *M. Wehab Decl.* ¶ 9 (Exh. M).

These declarations consist of speculative protestations of innocence. They simply do not raise genuine issues of material fact with respect to any of the elements of the violations that are established in the administrative record. In other words, because the Government has succeeded in establishing through admissible evidence that violations occurred, plaintiff's evidence—or the inferences to be drawn therefrom—must affirmatively contradict what the Government represents as fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Merely raising a "metaphysical doubt" that the facts are otherwise is not sufficient. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587,

106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

Plaintiff also argues that there is no circumstantial evidence such as sales receipts to corroborate the investigators' claims that they made purchases at Daldas Grocery. In light of the transaction reports in the administrative record, the truthfulness of which has been attested to under penalty of perjury, the absence of such evidence does not raise a genuine question of material fact. Accordingly, the court finds that the alleged violations occurred, and summary judgment must be granted to the Government on this issue.

**B.** *Is the Sanction Arbitrary and Capricious?*

■ The occurrence of the violations having been established, the court must now determine whether the three-year disqualification imposed on Daldas Grocery is arbitrary and capricious—in other words, that it was " 'unwarranted in law ... or without justification in fact.' " *Plaid Pantry Stores, Inc. v. United States,* 799 F.2d 560, 563 (9th Cir.1986) (quoting *Woodward v. United States,* 725 F.2d 1072 (6th Cir. 1984)). If the court so finds, it may impose a different penalty. *See* 7 U.S.C. § 2023(a) ("If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence.").

1. Authority for and Range of Penalties.

The authority of the FNS to impose sanctions on firms participating in the food stamp program, and the bases for the sanctions, are set forth in 7 C.F.R. § 278.6. A firm may be disqualified permanently, or for a period ranging from six months to five years.[12] The permanent and five-year disqualifications are not at issue in this case.

A six-month disqualification is warranted if "the evidence shows that personnel of

the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management." 7 C.F.R. § 278.6(e)(5). A one-year disqualification is warranted if:

> the ownership or management personnel of the firm have committed violations such as the sale of common nonfood items in amounts normally found in a shopping basket, and FNS had not previously advised the firm of the possibility that violations were occurring and of the possible consequences of violating the regulations.

*Id.* § 278.6(e)(4).

A three-year disqualification will be imposed if:

> it is the firm's [practice] to commit violations such as the sale of common nonfood items in amounts normally found in a shopping basket and the firm was previously advised of the possibility that violations were occurring and of the possible consequences of violating the regulations.

*Id.* § 278.6(e)(3).

The regulatory scheme thus contemplates:

(i) a six-month penalty if one factor is present (violations by personnel due to carelessness or poor supervision by management);

(ii) a one-year penalty if two factors are present (violations by ownership or management personnel and the FNS had not previously warned the firm); and

(iii) a three-year penalty if two *different* factors are present (it is the firm's practice to commit violations and the FNS had previously warned the firm).

Common to each of these penalties is the requirement that the firm not have been sanctioned before.

In making a penalty determination, the FNS considers "(1) the nature and scope of the violations committed by personnel of the firm, (2) any prior action taken by the

---

**12.** The length of these periods is doubled if the firm has been sanctioned previously. 7 C.F.R. § 278.6(e)(6).

FNS to warn the firm about the possibility that violations are occurring, and (3) any other evidence that shows the firm's intent to violate the regulations." 7 C.F.R. § 278.6(d). According to the internal guidelines of the FNS, "[f]our or more sales of at least three inexpensive nonfood items each, without a substantial attempt to comply" indicate that selling such items for food coupons is the firm's usual practice. *FNS Handbook 318* § 1221(A)(1)(c).[13]

Later in the internal guidelines, however, an inconsistent definition occurs: violations will be considered the normal practice of the firm, as opposed to the result of carelessness or poor supervision, when there has been a minimum of four sales of ineligible items *and* any or all of the following persons took an active part in the violations: (1) the owner, family members or relatives who are regularly involved in the operation of the firm, (2) members of management, or (3) two or more clerks who, based on investigative evidence, customarily engage in violative transactions. *Id.* § 1221(B)(1)–(3). In accordance with the familiar maxim of jurisprudence that the particular qualifies the general, therefore, the evidence must meet the latter definition in order to support a finding of "practice."

2. How the Facts Fit the Penalty Conditions.

It is evident from the administrative record that the FNS had warned Daldas Grocery previously of the possibility that violations were occurring and of the possible consequences of violating the regulations. These warnings took the form of letters from Mr. Daniels to plaintiff dated June 11, 1984, November 22, 1984, and October 20, 1987. *AR 116, 105, 91.*[14]

It is not at all evident that the violations which occurred between September 28, 1988 and December 19, 1988 constituted the "practice" of Daldas Grocery. The ad-

ministrative record shows five improper transactions, one involving two violations, over approximately three months. One clerk was involved in the transactions on September 28 and October 24, 1988, a different clerk was involved in the transactions on December 6 and December 15, 1988, and a third clerk was involved in the December 19, 1988 transaction.

None of the clerks involved in the transactions was identified by FNS investigators, nor was the relationship of the clerks to the ownership of Daldas Grocery specified. In light of this utter absence of identification, the evidence cannot support a finding that either the "owner, family members or relatives" or "members of management" took an active part in the violations. The question that remains, therefore, is whether "two or more clerks ... who customarily engage in violative transactions" took an active part in the transactions.

Because the guidelines do not define "customary," the court must assume that it means the same as "usual"—four or more transactions. *See FNS Handbook 318* § 1221(A)(1)(c). Three different clerks are described in the charging letter (*AR 44–46*). The administrative record does not show that any of the three clerks involved in the violative transactions were involved in four or more such transactions, or that any of the charged violations involved two or more clerks. Thus, on the basis of the evidence, the court finds that it was not the "practice" of Daldas Grocery to violate the regulations of the food stamp program.

Under 7 C.F.R. § 278.6(e)(3), in order for a three-year disqualification to be appropriate, there must be a "practice" of committing violations. As discussed above, however, the facts do not support such a finding. Because the penalty imposed by the FNS is "without justification in fact,"

---

**13.** The text of Chapter 12 of FNS Handbook 318 was submitted in full by plaintiff and in part by the Government.

**14.** A warning is not taken into consideration in determining the penalty unless it was given

within three years of the violation. *FNS Handbook 318* §§ 1210(A), 1221(E). Daldas Grocery received a warning less than one year prior to the violations at issue in this case.

therefore, the court finds that it was arbitrary and capricious and thus invalid.

## V. PENALTY DETERMINATION.

■ The court now turns to a determination of the appropriate penalty, given the facts in this case. A brief observation on the weakness of the penalty scheme in 7 C.F.R. § 278.6 is in order. The fundamental problem in this scheme is the inconsistency in the bases for imposing penalties. In any rational scheme where penalties are imposed on the basis of multiple factors, those factors would change only one at a time.[15] Under the FNS regulation, in contrast, both factors change simultaneously with each penalty level. "Loopholes" such as the one in the present case, where one factor (previous warning) relating to the three-year penalty is met, while the other (firm practice) is not, are thus bound to occur. How can a court, or the FNS, for that matter, fairly and consistently impose penalties in such cases?

The regulations at issue proceed from the assumption that because recipients of food stamps "lack judgment as well as income" and will misuse them, the FNS (which knows their true needs) is justified in seeking to prevent the purchase of certain items, which recipients may find more desirable than those purchasable with food stamps. See Winter, "Poverty, Economic Equality and the Equal Protection Clause," 1972 Supreme Ct.Rev. 41, 70–74. Such regulations raise profoundly troubling issues, far beyond what is properly before this court. Ibid. Those matters aside, however, it is clear that a government that seeks to substitute its judgment for its citizens' must do so with internally consistent regulations, and any penalties imposed must logically relate to the conduct triggering them.

The question, therefore, is what penalty accords with plaintiff's conduct, as shown by the Government.[16] Because plaintiff was warned by the FNS, it might on the one hand appear that he should receive a penalty greater than a one-year disqualification. See 7 C.F.R. § 278.6(e)(4). However, as a result of the Government's failure to identify the clerks involved in the violative transactions, the second requirement for a one-year penalty—that "ownership or management personnel" committed violations—is not met. Because both prior warning and ownership or management involvement are necessary for the disqualification to exceed one year, that penalty is not appropriate.

It does appear from the record that "carelessness or poor supervision by the firm's ownership or management"—namely, plaintiff—resulted in violations. No other factor is specified as a condition of imposing a six-month disqualification. However, implicit in the penalty scheme is the idea that a previously-warned firm that commits a violation is deserving of greater sanctions than a firm that has not been warned. Thus it would be anomalous for this court to impose a penalty of six months' disqualification and ignore the intended enhancing effect of a prior warning.

Taking into account the violations that have been shown to have occurred as a result of carelessness or poor supervision, together with the prior warning (a factual combination apparently not anticipated by FNS regulators), therefore,

IT IS HEREBY ORDERED that the three-year disqualification imposed by the FNS be set aside and that Daldas Grocery be disqualified from participation in the Food Stamp Program for a period of nine months, retroactive to April 18, 1990.

---

**15.** E.g., if conditions A and B are present, penalty # 1 is imposed; if conditions A and C (C includes and exceeds B) are present, penalty # 2 is imposed; if conditions A and D (D includes and exceeds C) are present, penalty # 3 is imposed.

**16.** A "civil money penalty" may be imposed in lieu of disqualification if "there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." 7 C.F.R. § 278.6(f)(1). The court will defer to the finding of the FNS that a money penalty is not appropriate, in view of the presence of comparable markets in the immediate vicinity of Daldas Grocery. See Decl. of Mary Elizabeth Carey filed June 18, 1990.