811 F.Supp. 419 (1992)
Eddie PENA d/b/a Galloway Grocery
v.
UNITED STATES DEPARTMENT OF AGRICULTURE, FOOD AND NUTRITION SERVICE.
Civ. No. H-C-92-25.
United States District Court, E.D. Arkansas, E.D.
December 16, 1992.
*420 Timothy Steven Parker, Daggett, Van Dover & Donovan, Marianna, AR, for plaintiff.
Charles A. Banks, U.S. Atty. by A. Douglas Chavis, III, Asst. U.S. Atty., Little Rock, AR, for defendant.

MEMORANDUM OPINION AND ORDER
GEORGE HOWARD, Jr., District Judge.
Plaintiff Eddie Pena (Pena) seeks judicial review of an administrative decision of the United States Department of Agriculture, *421 Food and Nutrition Service (FNS) permanently disqualifying Pena and his store, Galloway Grocery (Galloway's) from participation in the food stamp program. 7 U.S.C. sec. 2023.
Pena owns a small grocery in Marianna, Arkansas. He primarily stocks convenience type food items. Pena was authorized to participate in the food stamp program on October 13, 1988.
FNS investigated Pena for possible food stamp violations based on its finding that Pena had a high rate of food stamp redemptions compared to the amount of reported food sales. An investigative aide made seven visits to Galloway's from January 14, 1991 through October 19, 1991, and reported that a total of 55 ineligible items were sold for food coupons. In addition, Pena was alleged to have accepted food coupons in exchange for cash, and accepted food coupons in payment of sales tax, in violation of Sections 278.2(a) and (b) of the Regulations.[1]
Bobby J. Hood, Officer in Charge of the Little Rock Field Office of FNS notified Pena by letter dated December 9, 1991, of the violations and the possibility that Galloway's was being considered for disqualification from the food stamp program and/or the imposition of a civil money penalty. Pena was notified that he had ten days from receipt of the letter to request a civil money penalty and to provide information or an explanation regarding the charges.[2]
Pena, through his counsel, responded to Hood by letter dated December 20, 1991. Pena denied the charges and submitted the affidavit of an individual who supported Pena's assertion that he did not exchange food stamps for ineligible items or for cash. Pena's counsel unsuccessfully sought the name of the investigative aide. After FNS denied him the FOIA request for the name, Pena's counsel stated that he had no further response to the December 9th charge letter.
*422 By letter dated January 22, 1992, Hood notified Pena that FNS found that the violations had occurred.[3] Hood determined that the violations included two trafficking transactions during which Pena accepted food coupons in exchange for cash and seven transactions involving the sale of ineligible items.[4] As the evidence revealed that Pena had trafficked in food coupons, and as Pena did not request a civil money penalty, FNS permanently disqualified Galloway's from participation in the food stamp program.
Pursuant to 7 C.F.R. sec. 278.8(a) and sec. 279.5, Pena requested review of the administrative action. The administrative review officer found that the charges were supported by substantial credible evidence. He sustained the assessment of a permanent food stamp program disqualification and a $177.65 fiscal claim against Pena. The review officer noted that he had given full consideration as to whether the imposition of civil money penalties would be appropriate or applicable in this situation as set forth in Section 278.6.[5]
Pena filed his complaint in federal district court on March 13, 1992. FNS answered and brought a counterclaim under the False Claims Act, 31 U.S.C. sec. 3729 et seq. On April 1, 1992, the Court entered an order staying the administrative action pending disposition of the trial de novo.
The Food Stamp Act provides that issues of fact are to be tried de novo in the district court, which is to "determine the validity of the questioned administrative action in issue." 7 U.S.C. sec. 2023(a). The Act's de novo review provides a wider scope of review than the "substantial evidence" standard found in the Administrative Procedure Act ... (cites omitted). "As a result, the district court `must reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously appraised in the administrative proceedings.'" (cite omitted).
Sims v. U.S. Department of Agriculture Food & Nutrition Service, 860 F.2d 858, 862-63 (8th Cir.1988).
The plaintiff bears the burden of establishing the invalidity of the agency's action by a preponderance of the evidence. Redmond v. U.S., 507 F.2d 1007, 1012 (5th Cir.1975). Should the Court find that a violation has occurred, the Court may review whether the sanction imposed is arbitrary and capricious. Studt v. U.S., 607 F.2d 1216, 1218 (8th Cir.1979). See Haskell v. U.S. Department of Agriculture, 930 F.2d 816, 820 (10th Cir.1991) (Secretary's imposition of sanctions should be upheld unless court finds that the choice of sanction "is unwarranted in law or without justification in fact.")
The evidence at the trial establishes that George Kinney worked as a part-time investigative aide of the FNS. He was employed by FNS Investigator Jan Fleming to assist in the apprehension of food stamp violators. Kinney was paid $5.00 an hour and his work entailed visiting grocery stores in the guise of a customer with food stamps provided by Fleming and instructions to buy groceries and other merchandise which were both eligible and ineligible.
Fleming would meet Kinney on the outskirts of town and tell him at what store he *423 was to "shop," and how many of eligible or ineligible items he was to buy. She would give Kinney a certain number of food stamp booklets and record the serial numbers off those booklets. She would also ask Kinney if he had any of his own money on him and ask Kinney to hand it to her. Kinney and Fleming then drove in separate vehicles to the vicinity of the store, in this instance Galloway's. Fleming observed Kinney entering and leaving Galloway's but did not observe him in the store. After Kinney left the store with the grocery bag, Kinney would record the items bought.
Fleming testified that Kinney "shopped" at Galloway's on seven different occasions. The investigative report reveals the following:
1. On January 14, 1991, Fleming gave Kinney $50.00 in food coupons. He purchased three ineligible items; 1 12-oz. can of Drain, 1 12-oz can Boraxo, and one 17 oz. box of Cheer laundry detergent. He also bought three eligible items; a bag of cookies, a box of oatmeal, and a box of crackers. Kinney informed Fleming that after he purchased the items, he had $37.00 in food stamps remaining. He informed Fleming that he asked Pena to exchange cash for food stamps and that Pena did so, giving Kinney $21.00 in exchange for $37.00 worth of food stamps. Kinney did not provide Fleming with a receipt of the transaction. Fleming did record the serial numbers on the cash. Kinney did not return any food stamps to Fleming, but returned $2.18 in cash.
2. On February 9, 1991, Fleming gave Kinney $115.00 in food stamps. Kinney purchased three ineligible items; 1 34-oz. bottle of Pine Sol, a 39-oz. box of Cheer, and 1 4-roll pack of Charmin bathroom tissue. He purchased three eligible items; 1 jar of instant coffee, a jar of peanut butter, and a bottle of barbecue sauce. Kinney reported that Pena would not give him money for stamps when asked. The receipt shows a total of $19.51, including $0.57 in sales tax. Kinney returned $95.00 in food stamps in $0.49 in change.
3. On April 6, 1991, Fleming gave Kinney $130.00 in food coupons. Kinney purchased four ineligible items; 1 42-oz. box of Cheer, 1 gallon bottle of bleach, 1 22-oz. bottle of Ivory dishwashing liquid, and 1 box of Steel-Flex trash bags. He purchased four eligible items; 1 box of light salt, one bottle of barbecue sauce, one bottle of saccharin, and one jar of peanut butter. The purchase price of the items was $23.62. Reference is made to a receipt which shows $0.70 in sales tax charged. However, no receipt is contained in the administrative record concerning this transaction. Kinney also contends that Pena exchanged six dollars in food stamps for six dollars in cash, and the serial numbers of those bills were noted. Kinney returned $100.00 in food stamps and $0.38 in cash to Fleming.
4. On June 15, 1991, Fleming gave Kinney $65.00 in food stamps. He purchased eleven ineligible items; 1 telephone clock radio combination, 1 32-oz. box of Ajax laundry detergent, 1 16-oz. can Black Flag insect spray, 1 container of W.E. Garrett & Sons snuff, 1 Black Flag insecticide sprayer, and 6 3-oz. pouches of Levi Garett chewing tobacco. The sales receipt shows that Kinney was charged $29.38 which included $1.92 in sales tax. There is a charge of $1.70 which is unaccounted for. Kinney claims to have used $40.00 in food stamps. He returned $25.00 in stamps and $0.62 in cash to Fleming. The receipt did not contain the $10.00 that Kinney said he was charged for the clock-radio.
5. On July 6, 1991, Fleming gave Kinney $41.00 in food stamps. He purchased nine ineligible items; seven 3-oz. bags of Red Man Chewing tobacco, 1 32-oz. box of Ajax laundry detergent, and 1 15-oz. bottle of Pine Sol cleaner. He purchased four eligible items; 2 7-oz. boxes of spaghetti, 1 3.5 oz. of sweetener, and 1 11-oz. bag of cookies. No receipt was given to Kinney. He returned $14.00 in food stamps and $0.85 in change, revealing that the items cost $26.15. However, the summary of purchase *424 sheet notes that no price is indicated on the Red Man chewing tobacco.[6]
6. On September 7, 1991, Fleming gave Kinney $140.00 in food stamps. He bought 13 ineligible items; ten 3-oz. packages of Red Man chewing tobacco, 1 22-oz. bottle of Joy dishwashing liquid, 1 14-oz. can of Ajax cleanser, and 1 42-oz. box of Tide laundry detergent. He bought 4 eligible items; 1 48-oz. can of shortening, 2 12-oz. cans of condensed milk, and 1 24-oz. can of tripe. Pena refused to exchange stamps for cash when Kinney asked him. The receipt reveals that Kinney was charged $31.18 which included $1.45 sales tax. He returned $108.00 in coupons and $0.82 in cash to Fleming.
7. On October 19, 1991, Fleming gave Kinney $27.00 in food stamps. Fleming later learned that Kinney had $1.54 in cash.[7] Kinney purchased 12 ineligible items: six 3-oz. packages of Levi Garrett chewing tobacco, 3 packages of Days O Work chewing tobacco, 1 22-oz. bottle Ivory dishwashing liquid, 1 15-oz. bottle Pine Sole pine oil cleaner, and 1 package of 3 5-oz. bars of Zest soap. He did not purchase any eligible items. The sales receipt Kinney was charged $27.89 which included $1.82 in sales tax. The sales receipt also shows payment for four packages of Days O Work chewing tobacco, but the grocery bag Kinney showed Fleming had only three packages.
Pena denies that he violated the Act or the regulations. He contends that he never sold ineligible items or exchanged cash for food coupons.
Pena is a former school teacher who entered the grocery business about 3 years ago. He has lived in Lee County, Arkansas about 40 years. Pena stated that he has known Kinney for over thirty years. According to Pena, he stayed at the Kinney house on Saturday nights for over a year when he was a teenager and working in town.
Pena stated that Kinney did come into Galloway's in 1990, seeking credit. According to Pena, Kinney bought about $50.00 worth of items which Pena gave him on credit until Kinney received disability payments and would be able to repay.
Pena testified that in November of 1990, Kinney brought 3 articles for Pena to sell in the store for him. One item, a clock-radio-telephone combination was bought by a Mario Guerrero for $20.00. Pena contended that Kinney had guaranteed to Guerrero that the clock-radio-telephone combination would work. A few days later Guerrero returned, saying that the telephone did not work. Pena claimed to have loaned Kinney $20.00 for Kinney to "make good on his guarantee" and pay back to Guerrero.
Mike Spath, a supervisor with Riceland Foods, testified that he was present in the store the day Guerrero bought the clock-radio-telephone combination from Kinney. Spath corroborated Pena's testimony that Kinney had sold the item to Guerrero for $20.00.
Pena further stated that Kinney came in Galloway's about three or four times in 1990. Pena claimed that Kinney was not in the store in 1991.[8]
FNS's case at trial consisted of the testimony of Fleming and Kinney, along with the introduction of the administrative record. *425 It is clear, based on the procedure employed by Fleming and described above, that the credibility and believability of Kinney is crucial to FNS' ability to establish the violations. See Sharifi v. U.S., 754 F.Supp. 1543, 1546-47 (N.D.Ala.1991). That is, Fleming had to rely on Kinney accurately relating what had transpired, and truthfully reporting whether he had any cash or coupons of his own.
The Court, after carefully observing and scrutinizing Kinney, concludes that his testimony in part is not credible. At the outset, the Court notes that Kinney did not appear to have an independent recollection concerning any of the transactions. Indeed, FNS' entire case involved showing Kinney the transaction reports and asking whether he had been at Galloway's store on each occasion and purchased the items indicated on the reports.
It is clear, judging from Kinney's quick perusal of the documents, and his own admission that he has difficulty reading and only has a seventh or eighth grade education, that he did not review the reports presented to him. Thus, Kinney provided no independent evidentiary support to the administrative record.[9]
Furthermore, Kinney's testimony is not credible based on other assertions. He claimed to have always given Fleming his money or to never have money. Yet, during the October 19th transaction, Kinney paid for some items with his own money  money that Fleming learned about only after Kinney told her he had to use it. Thus, Kinney's assertion that he never had his own money is not believable.
Kinney also admitted to engaging in his own private investigation. He stated that on one occasion he asked Ed Catlett whether he knew anyone who would buy food stamps.[10] Kinney saw nothing wrong with this independent activity, although Fleming stated that such activity would not have been condoned had she had knowledge of it.[11]
FNS' case concerning the trafficking charges against Pena rests almost entirely on Kinney's testimony. No receipts involving the transactions were provided. Fleming was required to believe that Kinney had not brought any of his own money into Galloway's. The cash allegedly received by Kinney was not introduced at trial. See Luu v. U.S. Department of Agriculture, 614 F.Supp. 541 (E.D.Mo.1985).
Thus, the Court finds that the evidence does not establish that Pena engaged in trafficking; that is, the Court finds that Pena did not exchange coupons for cash.
This does not end the inquiry, however. FNS also contends that Pena sold ineligible items in violation of the Act and regulations. While the credibility of Kinney is important with regard to these violations it is not dispositive. There is independent evidence, aside from Kinney's testimony, to support the agency's determination. Fleming observed Kinney enter the store, and leave it with a bag of items.[12] There are receipts for a number of transactions. It is highly unlikely, based on the evidence, that Kinney would have had enough money of his own to buy all the items. Furthermore, it is unlikely given Kinney's limited education and intellectual ability, that he would be able to manipulate the purchase of items in such a way as to come out with the correct change and food coupons. That is, a much greater degree of sophistication *426 would have been required to fabricate the purchases of eligible and ineligible items than to concoct the exchange of coupons for money.
The Court, however, is not persuaded that Pena sold Kinney the clock-radio for $10.00 in food stamps. The receipt does not indicate that Kinney purchased the radio. Furthermore, given the testimony concerning the sale and purchase of items obtained at the auction the Court is not convinced that the clock-radio was purchased as Kinney told Fleming.
Having found that Pena did not engage in trafficking, the Court finds that the imposition of a permanent disqualification cannot be sustained. However, having found that Pena violated the Act and regulations by selling ineligible items for food stamps, the Court may enter "such judgment or order as it determines is in accordance with the law and the evidence." 7 U.S.C. sec. 2023(a). See Wehab v. Yeutter, 743 F.Supp. 1353, 1358 (N.D.Cal.1990) (If sanction is arbitrary and capricious, i.e., unwarranted in law or without justification in fact, court may impose a different penalty). The Court may also remand the action to the agency for a determination of the proper sanction. See Goodman v. U.S., 518 F.2d 505, 512 (5th Cir.1975).
The Court has considered the range of sanctions applicable to this situation. The Court is reluctant to disqualify the firm for any period of time. Pena had never been warned previously of the possibility of any violations.[13] The violations in this instance were limited. The Court is particularly concerned with FNS' use of Kinney as its "undercover" agent given his questionable credibility and limited capabilities.[14]
The Court finds that a warning letter is the appropriate sanction in this instance. 7 C.F.R. sec. 278.6(e)(7).
The United States has filed a counterclaim under the False Claims Act (FCA). The section relied on by FNS provides that "[a]ny person who knowingly presents, or causes to be presented to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person ..." 31 U.S.C. sec. 3729(a)(1).
FNS seeks $10,000 in penalty for seven claims and $429.66 in damages (representing three times the amount of $143.22).
The FCA defines a claim as
any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.
31 U.S.C. sec. 3729(c). See Blusal Meats, Inc. v. United States, 638 F.Supp. 824, 827 (S.D.N.Y.1986) (discussion of elements of claim under FCA). Courts have found that each separate fraudulent submission by a *427 defendant demanding payment from the United States is a claim. U.S. v. Killough, 848 F.2d 1523, 1533 (11th Cir.1988).
The problem with FNS' contention is that there is no evidence that Pena ever presented seven claims for payment. The only evidence that Pena ever redeemed the food stamps is contained in his response to FNS's motion to produce. In answer to request No. 2 asking that Pena produce copies of any food coupons received on the date of the food coupon transactions alleged in the counterclaim and not redeemed, Pena answered that all food coupons have been redeemed.
The Court finds that the evidence supports that Pena made, at the most, one false or fraudulent claim for payment. The Court further finds, based on the discussion above, that FNS has been damaged in the amount of $122.73.[15]
Thus, the Court finds that FNS is entitled to judgment on its counterclaim under the FCA. The Court finds that Pena violated the FCA by knowingly presenting a false and fraudulent claim for payment or approval. The Court finds that Pena should be assessed a civil penalty in the amount of $5,000.00 along with three times the damages of $122.73, or a total penalty in the amount of $5,368.19.
Accordingly, the Court vacates the administrative determination that Pena engaged in trafficking of food stamps and sets aside the agency's action permanently disqualifying Pena and Galloway's from participation in the food stamp program. The Court affirms the agency's determination that Pena violated the Food Stamp Act and its regulations by selling ineligible items. The Court finds that the appropriate sanction for the violation is a letter of warning and FNS is directed to issue a letter of warning to Pena in accordance with 7 C.F.R. sec. 278.6(e)(7).[16]
Judgment will be granted in favor of FNS on its counterclaim under the FCA.
IT IS SO ORDERED.

JUDGMENT
Pursuant to the Memorandum Opinion and Order entered this date, the administrative action permanently disqualifying plaintiff from participation in the Food Stamp Program and the assessment of $177.65 fiscal claim is vacated and set aside. Defendant is directed to issue a letter of warning to plaintiff based on a finding that plaintiff sold ineligible items for food coupons.
Judgment is entered in favor of defendant and against plaintiff on the counterclaim under the False Claims Act. Judgment is awarded in favor of defendant in the amount of $5,368.19.
NOTES
[1] 7 C.F.R. § 278.2 provides as follows:

(a) Use of coupons. Coupons may be accepted by an authorized retail food store only from eligible households or the households' authorized representatives, and only in exchange for eligible food. Coupons may not be accepted in exchange for cash, except when cash is returned as change in a transaction in which coupons were accepted in payment for eligible food ... Coupons may not be accepted in payment of interest on loans or for any other nonfood use....
(b) Equal treatment for coupon customers. Coupons shall be accepted for eligible foods at the same prices and on the same terms and conditions applicable to cash purchases of the same foods at the same store except that tax shall not be charged on eligible foods purchased with coupons....
[2] 7 C.F.R. § 278.6(b) provides:

(b) Charge letter
(1) General Provisions.
Any firm considered for disqualification or imposition of a civil money penalty ... shall have full opportunity to submit to FNS information, explanation, or evidence concerning any instances of noncompliance before FNS makes a final administrative determination. The FNS regional office shall send the firm a letter of charges before the determination. The letter shall specify the violations or actions which FNS believes constitute a basis for disqualification or imposition of a civil money penalty. The letter shall inform the firm that it may respond either orally or in writing to the charges contained in the letter within 10 days of receiving the letter. The firm's responses shall set forth a statement of evidence, information, or explanation concerning the specified violations or acts. The firm shall make its response, if any, to the officer in charge of the FNS field office which has responsibility for the project area in which the firm is located.
(2) Charge letter for trafficking.
(i) The charge letter shall advise a firm being considered for permanent disqualification based on evidence of trafficking in food coupons, ... that the firm must notify FNS if the firm desires FNS to consider the sanction of a civil money penalty in lieu of permanent disqualification.
(ii) Firms that request consideration of a civil money penalty in lieu of a permanent disqualification for trafficking shall have the opportunity to submit to FNS information and evidence as specified in § 278.6(i) that establishes the firm's eligibility for a civil money penalty in lieu of a permanent disqualification in accordance with the criteria included in § 278.6(i). This information and evidence shall be submitted within 10 days, as specified in § 278.6(b)(1).
(iii) If a firm fails to request consideration for a civil money penalty in lieu of a permanent disqualification for trafficking and submit documentation and evidence of its eligibility within the 10 days specified in § 278.6(b)(1), the firm shall not be eligible for such a penalty.
[3] 7 C.F.R. § 278.6(c) provides:

The letter of charges, the response, and any other information available to FNS shall be reviewed and considered by the appropriate FNS regional office, which shall then issue the determination.
[4] 7 C.F.R. § 271.2 defines "trafficking" as "the buying or selling of coupons or ATP [Authorization to participate] cards for cash.
[5] 7 C.F.R. § 278.6(e) sets forth the penalties to be imposed for violations of the Food Stamp Act or regulations. The regulations require disqualification of a firm permanently if personnel of the firm have trafficked in coupons. Section 278.6(f) provides that a civil money penalty for hardship to food stamp households may not be imposed in lieu of permanent disqualification.

The criteria for eligibility for a civil money penalty in lieu of permanent disqualification for trafficking are set forth in Section 278.6(i). A monetary penalty may be imposed if the firm submits substantial evidence demonstrating that the firm had established and implemented an effective compliance policy and program to prevent violation of the Food Stamp Program. See also 7 U.S.C. § 2021.
[6] The summary of purchase sheet indicates under the price of the item for the Red Man chewing tobacco "N.P.I." In the margin is written "1.17 ea total 8.19." There is no indication when the margin notation was added or by whom.
[7] Fleming testified that she learned Kenny had taken his own money into Galloway's when he informed her, upon returning with the groceries, that Fleming had not given him enough food stamps and that he had to use some of his pocket change to pay for the items.
[8] Pena attempted to bolster his case against Kinney by producing a judgment he obtained against Kinney in June, 1992, from Small Claims Court for the groceries purchased on credit and the $20.00 personal loan. The original small claims action was filed in April, 1992, after Pena had already received a charge letter from FNS. Although the default judgment, obtained after the fact, is of little probative value, the Court credits Pena's testimony that he had allowed Kinney to buy items on credit.
[9] Kinney never testified concerning any of the transactions. It is questionable whether he would have been able to recollect any of the visits as he readily admitted at trial that he did not even know "what today is" and he doesn't remember "dates and stuff." He was unable to remember how long he worked for Fleming or how much money he made.
[10] Catlett's testimony is at odds with that of Kinney. Catlett testified that Kinney came to his house one Sunday asking if Catlett would buy food stamps.
[11] Pena also attempted to impeach Kinney's credibility to demonstrating that he was less than honest with another government agency, the Social Security Administration. Kinney claimed not to remember whether he had reported all his earnings when he applied for disability benefits.
[12] The Court accepts Fleming's testimony and rejects Pena's assertion that Kinney was not in Galloway's any time in 1991.
[13] The Court notes that in many of the reported cases where the store was disqualified for a period of time, FNS had sent at least one warning letter (and in some situations several letters) about possible violations prior to initiating any action. See e.g. Wehab v. Yeutter, 743 F.Supp. 1353 (N.D.Cal.1990); Wilson v. U.S., 651 F.Supp. 701 (E.D.Wis.1986). Here, Pena was never warned before he received the charge letter.
[14] The regulations provide that FNS may impose a civil money penalty in lieu of disqualification when the firm sells a substantial variety of staple food items and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items as comparable prices. 7 C.F.R. § 278.6(f)

Pena stated that he carried primarily "convenience store" type items and that there were several large grocery stores in the area that sold food at lower rates. Thus, the imposition of a civil money penalty would not be warranted. However, the Court notes that Galloway's does serve a function in the community. It offers delivery service to the elderly and those without transportation.
[15] This amount represents the redemption of coupons for the ineligible items, the sales tax, and the overcharge.
[16] The Court rejects Pena's argument that he was denied due process because he was not provided the name of the investigative aide. As Pena sought review de novo, "the adequacy of the administrative process as an abstract matter is no longer important." Haskell v. U.S. Dept. of Agriculture, 930 F.2d 816, 820 (10th Cir.1991) (cite omitted)