Larry L. WOLF and Mr. Larry's IGA,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 80–1575.

United States Court of Appeals,
Tenth Circuit.

Submitted Oct. 2, 1981.

Decided Oct. 28, 1981.

Craig Shultz of Shultz, Fisher, Monnat & Shultz, Wichita, Kan., for plaintiff-appellant.

James P. Buchele, U. S. Atty., and Kenneth L. Weltz, Asst. U. S. Atty., Wichita, Kan., and Robert L. Purcell, Asst. Regional Atty., U. S. Dept. of Agriculture, Shawnee Mission, Kan., for defendant-appellee.

Before BARRETT and LOGAN, Circuit Judges, and KUNZIG,* Judge.

LOGAN, Circuit Judge.

Larry L. Wolf, d/b/a Mr. Larry's IGA, appeals from the district court judgment upholding a six-month disqualification the Food and Nutrition Service division of the Department of Agriculture imposed on participation by Mr. Larry's IGA as a retailer in the food stamp program. The Secretary imposed the disqualification pursuant to 7 U.S.C. § 2021[1] after store personnel allowed Food and Nutrition Service investigators to exchange food stamp coupons for nonfood items, which the food stamp regulations prohibit. *See* 7 C.F.R. § 278.2(a). Administrative review within the Department upheld the suspension. Wolf then brought an action for a trial de novo in the district court, as authorized by 7 U.S.C. § 2023.[2] Pursuant to the statute, the trial de novo determined the validity of the administrative action.

At trial Wolf's principal contentions were that he had properly trained and supervised his employees, that he was not present when his employees broke the rules and should not be held accountable for their wrongful actions, and that the Food and Nutrition Service should have warned him at least once before it suspended his participation in the food stamp program. Following trial, the district court made factual findings that the store had violated the provisions of the Food Stamp Act, that Wolf was responsible for his employees' violations, that the Food and Nutrition Service had adequately warned him before imposing the suspension, and that the suspension was neither arbitrary nor capricious. The court entered judgment for the United States and affirmed the six-month disqualification. On review, Wolf renews his earlier arguments and adds that the trial court erred in its review of the sanction imposed by the Food and Nutrition Service.

In 1976 the Food and Nutrition Service authorized Mr. Larry's IGA to accept food stamps in exchange for eligible food items. Food and Nutrition Service personnel visited the store twice that year to educate the employees. They visited the store again on February 3, 1977, to discuss the store's relatively high food stamp redemption rate and to warn store employees of the consequences of violating food stamp regulations. On that date they also wrote to Wolf, giving him notice of their concerns. At about the same time, the Food and Nutrition Service began an investigation to determine if Mr. Larry's IGA was accepting food stamp coupons in violation of the law. As amply supported by the evidence, the trial court found that on five out of six visits during June and August 1977, various store employees permitted Food and Nutrition Service investigators to use food stamp cou-

---

* Honorable Robert L. Kunzig, Judge, United States Court of Claims, sitting by designation.

1. Section 2021 provides:

   "Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty of up to $5,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter. Such disqualification shall be for such period of time as may be determined in accordance with regulations issued pursuant to this chapter. The action of disqualification or the imposition of a civil money penalty shall be subject to review as provided in section 2023 of this title."

2. Section 2023 and the regulation issued pursuant thereto, 7 C.F.R. § 279, provide that an aggrieved food store may request administrative review by a food stamp review officer and subsequent judicial review by a United States district court.

pons to purchase ineligible items: cleaning supplies, cigarettes, and beer.

Wolf argues that he should not be held responsible for his employees' improper sales, but we find no merit to the argument. We agree with the First Circuit that:

"Plaintiff's personal non-involvement would not prevent his store's disqualification. The disqualification section, 7 U.S.C. § 2021 (Supp. 1 1977), requires only 'a finding . . . that such *store* . . . has violated any of the provisions of [the Food Stamp Act] or the regulations issued pursuant to [the Act].' (Emphasis added.) An improper sale by a cashier is sufficient to establish a violation."

*Kulkin v. Bergland*, 626 F.2d 181, 183 (1st Cir. 1980). *Accord, J.C.B. Super Markets, Inc. v. United States*, 530 F.2d 1119, 1121–23 (2d Cir. 1976).

Similarly, because the Act punishes violations committed by the *store*, the Food and Nutrition Service's failure to identify the clerks who improperly accepted the food stamps is irrelevant.[3] *J.C.B. Super Markets, Inc. v. United States*, 530 F.2d at 1121–22. Nor can the store owner escape responsibility because his employees engaged in an act that carries a penal sanction. In accepting the food stamp coupons, the checkers intended to benefit the store. *Id.* at 1122. Wolf's reliance upon *Badwan v. United States*, 541 F.2d 1388 (10th Cir. 1976), is misplaced. That case involved a single employee who, for personal gain and without the knowledge of the store manager or owner, purchased coupons at a discount, placed them in one of the store's cash registers, and removed an equivalent sum of cash.

Wolf complains that the government never proved the store redeemed the improperly-accepted coupons. However, no showing of redemption is required because the regulations, authorized by the statute, 7

U.S.C. § 2021, forbid the store's *acceptance* of coupons for ineligible items. 7 C.F.R. § 278.2(a). As to whether the Food and Nutrition Service gave Wolf adequate warning of suspected violations, we agree with the trial court that the visit and letter of February 3, 1977, conveyed adequate notice.

Wolf also contends that in determining the period of suspension, John Merz, the Food and Nutrition Service employee responsible for charging violations, improperly considered an unsubstantiated allegation that Wolf had been purchasing food stamp coupons for cash, at a discount, and redeeming them through the store. Even if considering such information is improper, *see* 7 C.F.R. § 278.6(d), Merz testified that his decision would have been the same if he had not known of the unsubstantiated allegation. As we explain below, the six-month suspension meets the guidelines set forth in the regulations.

Finally, Wolf argues that the trial court failed to review the propriety of the six-month suspension the Secretary imposed, and that the trial court should have determined whether the sanction was arbitrary or capricious. While some courts find no right to judicial review of the sanction,[4] most decisions have held that judicial review of the sanction is proper, but only to determine if it is arbitrary or capricious. *See Kulkin v. Bergland*, 626 F.2d 181 (1st Cir. 1980); *Bruno's Inc. v. United States*, 624 F.2d 592 (5th Cir. 1980); *Studt v. United States*, 607 F.2d 1216 (8th Cir. 1979); *Cross v. United States*, 512 F.2d 1212 (4th Cir. 1975). We need not decide at this time whether the district court should have reviewed the sanction. Appellant Wolf may not complain, because the trial court applied the standard more favorable to Wolf. It did review the punishment and determined that the six-month disqualification was neither arbitrary nor capricious. (R. I,

---

3. The investigators' reports, introduced at trial, contained descriptions of the store clerks.

4. *See Nowicki v. United States*, 536 F.2d 1171 (7th Cir. 1976); *Martin v. United States*, 459 F.2d 300 (6th Cir.), *cert. denied*, 409 U.S. 878,

93 S.Ct. 129, 34 L.Ed.2d 131 (1972). Whether the reasoning in *Martin* supports its conclusion has been questioned. *See Kulkin v. Bergland*, 626 F.2d 181, 185 n.7 (1st Cir. 1980).

88; R. II, 130.) Both the regulations[5] and previously reported cases amply support the trial court's conclusion that a six-month suspension for a violation occurring immediately after the store receives a warning is neither arbitrary nor capricious. *See, e. g., Kulkin v. Bergland,* 626 F.2d 181 (1st Cir. 1980) (one-year suspension); *Studt v. United States,* 607 F.2d 1216 (8th Cir. 1979) (one-year suspension).

The judgment of the trial court is hereby AFFIRMED.

---

**5.** Under the regulations, the Secretary may suspend participation for three years in the event of flagrant violations, one year if store policy is to accept coupons for certain ineligible items or it bought coupons at a discount, six months if the violation follows a warning, and 90 days if the violation was not preceded by a warning. 7 C.F.R. § 278.6(e). As noted above, warning preceded detection of the violations.