Queen WILSON, d/b/a Family Meat
Market, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 85–C–1536.

United States District Court,
E.D. Wisconsin.

Nov. 20, 1986.

Queen Wilson, pro se.

Matthew L. Jacobs, Asst. U.S. Atty., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, Chief Judge.

On October 31, 1986, and November 13, 1986, this action was tried to the Court.

The United States of America, defendant, presented its evidence first in order to make the plaintiff's presentation of her case easier. The trial was a judicial review of the administrative determination by the Food and Nutrition Service disqualifying the Family Meat Market, plaintiff, from participating in the food stamp program for three years. The Court heard and carefully considered the testimony adduced at trial and examined with care the exhibits and after applying the relevant statutory and judicial authority rendered its findings of fact and conclusions of law on November 13, 1986. This is a written decision memorializing the Court's decision.

### Findings of Fact

The Family Meat Market is a grocery store located at 3145 W. Lisbon in Milwaukee, Wisconsin. It is owned by Queen Wilson and her husband Zebedee Wilson. The only people who work in the store are family members. The Wilsons have five daughters and four sons. Only one daughter, Rosemary, works in the store. The ages of the Wilson's sons are as follows: Robert is 34 years old, Zebedee Jr. is 26 years old, Rickie is 25 years old, and Ryan 23 years old. Robert and Zebedee Jr. testified in court because they are the only male children who worked in the store. The Family Meat Market is open from 8 a.m. to 12 a.m. The store also advertises on the radio and gives credit to customers.

On November 8, 1982, the Food and Nutrition Service (FNS) received a retailer/wholesaler application to participate in the food stamp program for the Family Meat Market located at 3145 W. Lisbon, Milwaukee, Wisconsin 53208. The application, however, was not signed when submitted. Chris Brandstetder a Food Program Specialist with the FNS was then required to visit the Family Meat Market on November 16, 1982. Mr. Brandstetder spoke with Queen Wilson and conducted an onsite interview. He conducted a 20–30 minute presentation of the program explaining the rules and regulations. Ms. Wilson signed the application and Mr. Brandstetder instanter authorized the Family Meat Market to participate in the food stamp program.

The Family Meat Market appeared six months after the authorization on the quarterly inspection report. This report lists stores with unusually high food stamp redemptions. The Family Meat Market was listed as redeeming three times the number of food stamps as a percentage of the total sales as other stores in the area.

Mr. Brandstetder was required to visit the store. He visited the store in June 1983 and discussed with Queen Wilson the high use of food stamps and the possible violation of the program. On June 13, 1983, FNS sent a certified letter to the Family Meat Market confirming the high redemption and warned of the possible violations.

The store was monitored for three additional months. The number of food stamp redemptions still remained high. The Family Meat Market was referred for investigation. An investigation was conducted by John Gately of the Compliance Branch of FNS. Between fall of 1983 and March of 1985, there was no investigation of the Family Meat Market conducted due to the large number of cases pending. In March of 1985, Mr. Gately hired Gail Crockett to work as a shopper and to try to purchase ineligible items. Mr. Gately never "shopped" the store himself. Ms. Crockett was not a permanent employee, and she was paid on an hourly basis. Ms. Crockett made five purchases from the Family Meat Market located at 3145 W. Lisbon, Milwaukee, Wisconsin.

The procedure for the "shopping" was as follows. Mr. Gately would pick up Ms. Crockett at her home and drive to the Family Meat Market. Ms. Crockett was given a certain number of food stamps from the FNS for the purpose of purchasing the items from the store. Mr. Gately gave her the stamps in the car in an envelope with the Family Meat Market's name and address on. Ms. Crockett was instructed not to encourage the clerks to sell non-food items; she was not to purchase medicines or baby-type items. Ms. Crockett com-

pared the address on the envelope to the address on the store before entering the store.

Ms. Crockett "shopped" the Family Meat Market for the first time on March 7, 1985. She did not attempt to purchase ineligible food items. This shopping was done just to become familiar with the store. Ms. Crockett purchased $9.89 worth of food with food stamps.

On March 11, 1985, Ms. Crockett again shopped in the family meat market. She purchased the following eligible food items with food stamps: bread, bologna, rice, pickles, and beef stew. She purchased the following ineligible items with food stamps: Ivory dishwashing liquid, Northern bathroom tissue, and Dial soap. The total price of the purchases was $15.50.

On March 15, 1985, Ms. Crockett visited the Family Meat Market and purchased the following food items with food stamps: bread, cheese puffs, cereal, pork & beans, luncheon meat, and milk. The following ineligible food items were purchased with food stamps: Glad trash bags, Ivory dishwashing liquid, and Downey fabric softner. Ms. Crockett also tried to purchase a carton of Kool Mild cigarettes, but the clerk would not permit her to do so. The total price of the items was $15.38.

On March 16, 1985, Ms. Crockett returned to the store and purchased the following food items with food stamps: sausage links, sugar, grits, milk, bread, and grape jelly. The following ineligible items were purchased: Northern bathroom tissue, Ivory soap, and Dawn dishwashing liquid. The total price of the items was $11.91.

Ms. Crockett made a fifth and final shopping trip on March 18, 1985 and purchased the following eligible items: potato chips, bread, cheese, pork & beans, root beer, and beef franks. She purchased the following ineligible items with food coupons: Dawn dishwashing liquid, Vaseline petroleum jelly, and Scottissue bathroom tissue. Ms. Crockett asked to purchase cigarettes, but was refused by the clerk. The cost of the items was $11.93.

During each of the shopping visits, Mr. Gately remained in the car. He watched Ms. Crockett go in and out of the store. After shopping, Ms. Crockett would return to the car, and Mr. Gately would fill out the transaction reports in the car in the presence of Ms. Crockett.

Ms. Crockett described the clerks who waited on her at the Family Meat Market as follows:

| Date of Visit | Age | Height | Weight | Hair | Other |
|---|---|---|---|---|---|
| 3-7-85 | 45-50 | 6'1" | 180 | Blk & Gray | Mustache & Beard w/ Small Flecks of Grey or White |
| 3-11-85 | 45-50 | 6'1" | 180 | Blk & Gray | Mustache & Beard w/ Flecks of Grey or White |
| 3-15-85 | 45-50 | 6'1" | 180 | Blk & Gray | Mustache & Beard |
| 3-16-85 | 25 | 5'8" | 155 | Blk | Thin Mustache |
| 3-18-85 | 45-50 | 6'1" | 180 | Blk & Gray | Mustache & Beard w/ Small Flecks of Grey or White |

At trial, Ms. Crockett did not identify Robert Wilson, Zebedee Wilson, or Zebedee Wilson, Jr., as the clerks who waited on her in the store.

Following the investigation, Arthur L. Kotowski, Chief of FNS' Coupon Use and Redemption Section sent a letter of charges to Robert and Queen Wilson in care of the

Family Meat Market on April 18, 1985. This letter advised the Wilsons of the alleged violations that occurred at Family Meat Market between March 11, 1985 and March 18, 1985, inclusive. In his letter, Mr. Kotowski stated that FNS was considering disqualifying Family Meat Market from participating in the food stamp program and encouraged the Wilsons "to give us the benefit of any information, explanation or evidence you have regarding these charges."

On April 27, 1985, Robert Wilson responded to Mr. Kotowski's letter of charges. In his response, Robert Wilson indicated that he is the son of Queen and Zebedee Wilson, who are the actual owners of the Family Meat Market. Robert stated that he had not worked in the store past twelve noon since December 7, 1984; whereas all of the violations were alleged to have occurred after 4 p.m. in March 1985. Further, Robert Wilson asserted that he was fully aware of the food stamp regulations and had not violated them in any way.

On June 4, 1985, a case summary was prepared recommending that the Family Meat Market be disqualified for a three–year period because of the store's practice to sell ineligible food items. A civil money penalty was not recommended. This recommendation was upheld by the regional office. On June 21, 1985, FNS issued a decision disqualifying Family Meat Market from participating in the food stamp program for a period of three (3) years.

Subsequently, on June 27, 1985, counsel for the plaintiff requested an administrative review of FNS' decision. The administrative review of this case was assigned to Administrative Review Officer Richard Havnen. On July 16, 1985, Administrative Review Officer Havnen advised plaintiff's counsel that he had been assigned to the matter and briefly outlined the review procedures. Further, Mr. Havnen requested that plaintiff's counsel submit "information in support of the request showing the grounds on which review is being sought...."

On September 9, 1985, plaintiff's counsel filed a response describing the evidence supporting the review of FNS' determination.

On October 1, 1985, following his examination and review of the case including the information provided by the plaintiff in writing and at a hearing on September 23, 1985, Mr. Havnen issued his decision sustaining FNS' initial determination. Mrs. Wilson then filed a complaint in the United States District Court for the Eastern of Wisconsin to obtain judicial review of the final administrative determination.

On December 6, 1985, based on the stipulation of the parties pursuant to 7 C.F.R. § 279.10(d), the Court entered an order staying further administrative action in this matter. The Family Meat Market has continued to participate in the Food Stamp program during judicial review of this action.

## Applicable Law

Pursuant to the Food Stamp Act of 1977, as amended, Congress authorized the Secretary of Agriculture to administer the food stamp program and to promulgate such regulations as he deems necessary for the effective and efficient administration of the program. 7 U.S.C. §§ 2011–2029. The Secretary has designated the Food and Nutrition Service (FNS) of the Department of Agriculture as the agency to act on behalf of the Secretary and to implement the food stamp program. The Act provides for the issuance and use of food coupons by low-income households to be used to purchase food from retail and wholesale food stores. The Act further provides for the approval of retail food stores and wholesale food concerns wishing to be authorized to accept and redeem food stamps (7 U.S.C. § 2018).

As is relevant here, a participating retail food store can accept food coupons from consumers only for the purchase of "eligible food" items. 7 C.F.R. § 278.2(a). "Eligible foods" is defined, in pertinent part, as:

Any food or food product intended for human consumption except alcoholic bev-

erages, tobacco, and hot foods and hot food products prepared for immediate consumption....

7 C.F.R. § 271.2.

This trial is a judicial review of the administrative determination by the Food and Nutrition Service disqualifying the Family Meat Market from participating in the food stamp program for three years. "During the judicial review, the plaintiff must prove by a preponderance of the evidence that the administrative action was invalid." *Barbosa v. United States,* 633 F.Supp. 16, 18 (E.D.Wis.1986). The plaintiff does not have to show that FNS' procedures were defective, but rather, the trial is a trial *de novo;* a new evidentiary record. *McGlory v. United States,* 763 F.2d 309, 310 (7th Cir.1985) (per curiam). This Court must examine the agency's factual determinations on a fresh record. *Id.* at 311. When there is a denial of the events, the court must resolve the conflict in the versions of the events. *Id.*

■ The Act punishes violations committed by the store. *Wolf v. United States,* 662 F.2d 676, 678 (10th Cir.1981). Thus, it is irrelevant if the Food & Nutrition Service cannot identify the clerks who accepted the food stamps. Nor can a store owner escape liability because his employees accepted the checks rather than he himself because "[i]n accepting the food stamp coupons, the checkers intended to benefit the store." *Id.* A showing of redemption by the store is not required. A violation occurs when the store accepts coupons for ineligible items. 7 C.F.R. § 278.2(a); *Wolf,* 662 F.2d at 678.

### Penalty

Title 7, section 278.6(e)(3)(i) provides that FNS shall:

(3) disqualify the firm for 3 years if it is to be the first sanction for the firm and the evidence shows that:

(i) It is the firm's practice to commit violations such as the sale of common nonfood items in amounts normally found in a shopping basket and the firm was previously advised of the possibility that violations were occurring and of the possible consequences of violating the regulations....

"Firm's practice" means "the usual manner in which personnel of a firm or store accept food coupons as shown by the actions of the personnel at the time of the investigation." 7 C.F.R. § 271.2.

There is a difference between challenges to a finding of violation and challenges to a penalty. "[A] penalty may be set aside only if arbitrary and capricious...." *McGlory,* 763 F.2d at 311.

### Conclusion

■ This Court finds that the plaintiff has failed to prove by a preponderance of the evidence that the administrative action was invalid. It is clear that the Family Meat Market sold ineligible items for food stamps. The evidence has demonstrated that Gail Crockett made five visits to the Family Meat Market. During four of these visits she made purchases of ineligible items with food stamps. Mr. Gately saw her go in and come out of the Family Meat Market. It is also clear that the members of the family who worked in the store when questioned about the types of products that are eligible to be purchased with food stamps did not always accurately identify what products could be purchased.

Ms. Crockett did not identify Robert Wilson, Zebedee Wilson, or Zebedee Wilson, Jr., as the clerks who waited on her, but on one occasion she identified Queen Wilson as one of the persons who was in the store on one occasion when she was shopping. The law is clear, however, that it is not relevant if the shopper cannot identify the clerks who accepted the food stamps for the ineligible items. *Wolf,* 662 F.2d at 678. A violation occurs simply when the store accepts coupons for ineligible items. 7 C.F.R. § 278.2(a); *Wolf,* 662 F.2d at 678. The evidence in this case clearly shows that the Family Meat Market accepted food stamps for ineligible items. Queen Wilson has also admitted that she extends credit for food stamps which also is in violation of the food stamp program.

Although this Court was not requested to review the penalty imposed, the Court notes that the imposition of a three-year period of disqualification from the food stamp program was not arbitrary or capricious. The transactions with Ms. Crockett establish that it is the Family Meat Market's practice to sell ineligible items in exchange for food stamps. The Family Meat Market was advised of the possibility of violations in June 1983, and it was advised of the investigation on April 18, 1985. The store was also advised of the consequences of these violations. This is also the first violation for the store. The Court, therefore, finds that the imposition of a three-year period of disqualification from the food stamp program was not arbitrary and capricious. The penalty was within the sanctions set forth in the regulations.