**J & M FOOD STORE, INC. d/b/a, Uptown Fruit Ranch, Plaintiff,**

**v.**

**UNITED STATES of America, Defendants.**

**No. 95 C 3662.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 8, 1995.

William A. Barnett, Attorney at Law, Chicago, IL, for J & M Food Store, Inc. dba Uptown Food Ranch.

Ramune Rita Kelecius, United States Attorney's Office, Chicago, IL, for U.S.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This is a lawsuit, filed on June 22, 1995, for *de novo* judicial review of an administrative determination of the Food and Consumer Service Division ("FCS") of the United States Department of Agriculture. On August 10, 1995, this Court held a *de novo* bench trial in this matter. Immediately prior to trial the defendant voluntarily dismissed its counterclaim. Following the trial, the Court considered the written post-trial submissions filed by each party. The Court hereby enters the following Findings of Fact and Conclusions of Law which are expressly based upon consideration of all of the admissible evidence as well as this Court's own assessment of the credibility of the trial witnesses. To the extent, if any, that the Findings of Fact as stated may be deemed Conclusions of Law, they should be considered Conclusions of Law. Similarly, to the extent that matters expressed as Conclusions of Law may be deemed Findings of Fact, they shall also be considered Findings of Fact.

### FINDINGS OF FACT

1. Plaintiff J & M Food Store, Inc. is an Illinois corporation which does business under the name of Uptown Fruit Ranch ("Uptown Fruit Ranch") and is located in the City of Chicago, Illinois.

2. Uptown Fruit Ranch is a "retail food store" as that term is defined at 7 C.F.R. § 271.2 and has been authorized by the FCS to participate in the Food Stamp Program since October 1993.

3. On January 11, 1995 the FCS issued a "charge letter for trafficking," pursuant to Title 7, United States Code, Section 2021 and Regulation 278.6(b)(2)(ii), 7 C.F.R. § 278.6(b)(2)(ii), to the Uptown Fruit Ranch based upon three instances of "trafficking" in food stamps by alleged store personnel. (Govt. Ex. D). This letter notified the Uptown Fruit Ranch of the Department's intention to permanently disqualify it from participation in the Food Stamp Program.

4. On January 20, 1995, the Uptown Fruit Ranch, through legal counsel, timely responded to the charge letter, disagreeing with the allegation of trafficking, requesting file information from FCS, and requesting consideration of a civil money penalty pursuant to the provisions of Title 7, United States Code, Section 2021(b)(3)(B) and Regulation 278.6(i), 7 C.F.R. § 278.6(i). (Govt. Ex. E).

5. On February 1, 1995, FCS notified Uptown Fruit Ranch that it had denied the request for consideration of a civil monetary penalty due to its failure to submit documentation as required by Regulation 278.6(b)(2)(ii) within the required ten days. FCS also notified Uptown Fruit Ranch that its time to submit a documented response to the charge letter would be extended ten days past the date the Ranch received FCS's investigative documentation.

6. On February 21, 1995, after receipt of the investigative file, the Uptown Fruit Ranch timely submitted its formal response to the charge letter. In addition to a denial of the trafficking charges, the Uptown Fruit Ranch provided information concerning the compliance policy in effect at its store, as required as a condition of consideration of a civil monetary penalty under 7 C.F.R. 278.6(i).

7. On April 24, 1995, FCS issued its determination letter permanently disqualifying the Uptown Fruit Ranch from participation in the Food Stamp Program. FCS stated as its reason for refusing to consider a civil monetary penalty the fact, as alleged in the charge letter and found by FCS, that the store manager engaged in one of the alleged

trafficking violations, a criterion disqualifying the Uptown Fruit Ranch from consideration for a civil monetary penalty under 7 C.F.R. 278.6(i). (Govt. Ex. 6).

8. On April 28, 1995, the Uptown Fruit Ranch timely filed its request for administrative review of the determination of FCS.

9. After a hearing on May 26, 1995, the administrative review officer issued his final determination permanently disqualifying Plaintiff from the Food Stamp Program on June 1, 1995. (Govt. Ex. H).

10. The June 1, 1995, final administrative decision was premised upon the factual determinations that the manager of the Uptown Fruit Ranch, Mr. Michael Floros, participated in the purchase of food stamps from a FCS investigator on December 7, 1994, and that Mr. Steve Karas, the alleged purchaser of food stamps on October 25, 1994, November 7, 1994, and December 7, 1994, was an employee or agent of the Uptown Fruit Ranch.

11. Peter Floros, as the owner of the Uptown Fruit Ranch, accepted responsibility on behalf of the store for all violations committed by the store's employees when he applied for participation in the U.S.D.A. Food Stamp Program. (Tr. 112–13, 194, 196; Gov't. Ex. B at 4). Mr. Floros is responsible for any and all violations of the program that the Uptown Fruit Ranch employees may commit, whether the employees are new or part-time, paid or unpaid. (Govt. Ex. B).

12. The evidence at trial established that between October 12 and December 18, 1994, FCS conducted an investigation of the Uptown Fruit Ranch to determine if it was complying with the regulations governing the Food Stamp Program. On four occasions, FCS Investigator John Gately visited the Uptown Fruit Ranch posing as a food stamp recipient and attempted to determine whether the store would accept food stamps for cash. (Tr. 7–40).

13. The Uptown Fruit Ranch was targeted for FCS investigation based on a random computer-based review of its food stamp use. (Tr. 7–8).

14. On three separate occasions—October 25, November 7, and December 7, 1994—a person subsequently identified as Steven Karas purchased food stamps from Investigator Gately for an amount of cash representing less than the full face value of the food stamps. (Tr. 7–40). Specifically, on October 25, 1994, Steve Karas purchased $78.00 in food stamp coupons for $50.00 cash; on November 7, 1994, he purchased $130.00 in food stamp coupons for $90.00 cash; and on December 7, 1994, he participated in the purchase of $195.00 in food stamp coupons for $150.00 cash.

15. At trial, the Uptown Fruit Ranch challenged the FCS's final administrative decision that Steven Karas was employed by the store at the time he purchased the food stamps from Investigator Gately. The Uptown Fruit Ranch established that Steven Karas was not on the formal payroll of the Uptown Fruit Ranch. The FCS's regulations, however, prohibit food stamp trafficking by a paid or unpaid employee of the store. The Uptown Fruit Ranch argued at trial that Steven Karas, who did not testify at trial and who was present in the store on each occasion that Investigator Gately was in the store, was just a close friend of the owners of the store who just happened to spend a great deal of his time at the store. The Court has concluded that the Uptown Fruit Ranch's position with respect to the non-employee status of Mr. Karas is not supported by a preponderance of the trial evidence.

16. This Court finds the fact that Mr. Karas was seen by FCS Investigator Gately on four separate occasions at the Uptown Fruit Ranch wearing an apron fully supports FCS's administrative determination that Mr. Karas was in fact operating as an employee of the Uptown Fruit Ranch as that term is defined in 7 C.F.R. § 278.6(e)(1)(i). This finding is also supported by FCS Investigator Herbert Thompson's testimony concerning the identification of the Uptown Fruit Ranch's employees during his visit to the store on December 8, 1994. On that day, which directly followed Investigator Gately's December 7, 1994, purchase of food stamps at the store, he returned to the store and saw Mr. Michael Floros and Mr. Karas. (Tr. 50).

Mr. Karas was once again wearing an apron. (*Id.*). After Investigator Gately left the store, he provided a description of the two men to Investigator Thompson. (Tr. 51). Mr. Thompson then entered the store and spoke to Michael Floros, who identified himself. (Tr. 175, 178). When Investigator Thompson asked Michael Floros for the names and spelling of the employees of the store, Mr. Floros specifically identified Steve Karas as an employee. (Tr. 176–179; Govt.'s Ex. C).

17. The Uptown Fruit Ranch has never denied that the three illegal food stamp trafficking transactions took place at the store.

18. Peter Floros is the legal owner of the Uptown Fruit Ranch and worked at the store some of the time. (Tr. 96–97). Michael Floros, his brother, managed the store on a full-time basis and was there all of the time. (Tr. 109–110). Peter charged Michael with the responsibility of running the store and trained Michael and all of his other employees in the rules of the Food Stamp Program. (Tr. 102–103, 112–117, 121).

19. At trial, both Peter and Michael denied that they were aware of any illegal trafficking in food stamps at the store. (Tr. 103–104; 142; 153–154). This Court specifically discredits the testimony of Michael Floros. His testimony is directly at odds with the testimony of FCS Investigators John Gately and Herbert Thompson, which this Court specifically credits.

20. Michael Floros' testimony regarding the third food stamp trafficking incident on December 7, 1994, is especially incredulous and unworthy of belief. Mr. Floros testified that he just happened to repay Mr. Karas $150.00 at the same time that Mr. Karas was illegally purchasing $195.00 worth of food stamps for $150.00 from Investigator Gately. Michael Floros testified that his review of the invoices of December 7, 1994, shows that he repaid Mr. Karas $150.00 of a $167.00 invoice in cash on that date. (Tr. 149–152, 161; Pl.'s Ex. Group Invoice). This reimbursement, according to Michael Floros, was for a shipment of meat which Mr. Karas volunteered to pick up for the store on that date. (Tr. 161–162). This was the only time Mr. Karas allegedly ever picked up supplies for the store. (Tr. 161). Michael Floros, however, did not offer a rational explanation for the discrepancy between the $150.00 paid to Steve Karas and the $167.00 invoice. (Tr. 152). Moreover, Investigator Gately testified that the $150.00 was directly paid to him by Michael Floros. (Tr. 38–39). This testimony, along with the monetary discrepancy in the invoice, severely undermines Michael Floros' testimony that he was just repaying $150.00 to Steve Karas during Investigator Gately's visit to the store on December 7, 1994.

21. Michael Floros specifically testified that he gave the $150.00 to Mr. Karas. (Tr. 164). Mr. Floros also testified that Mr. Karas never wore an apron in the store. (Tr. 149; 159). Both of these specific points were directly contradicted by testimony of Investigator Gately. Mr. Floros further testified that he never identified Mr. Karas as a store employee to Investigator Thompson on December 8, 1994. (Tr. 153). This testimony was directly contradicted by Investigator Thompson. (Tr. 176–177). This Court specifically credits the testimony of Investigators Gately and Thompson on each of these disputed points. Simply put, Michael Floros' testimony did not in any way overcome the combined testimony of Investigators Gately and Thompson.

22. Mr. Floros testified that this repayment concerned a meat delivery obtained by Steve Karas for the store. The receipt, however, does not list Mr. Karas' name as the payee and it details a meat purchase of $99.02 as well as a substantial candy purchase of $68.59. Michael Floros never mentioned any candy purchase by Mr. Karas during his testimony before this Court. Thus, the receipt relied upon by Michael Floros also does not support his testimony concerning the alleged repayment to Steve Karas. (Pl.'s Ex. Group Invoice).

### CONCLUSIONS OF LAW

1. Pursuant to 7 U.S.C. § 2023(a) and 7 C.F.R. § 279.10(c), the Uptown Fruit Ranch is entitled to a trial *de novo* in this Court concerning the validity of the administrative action taken by the FCS to disqualify the

store from the Food Stamp Program for program violations.

2. As the plaintiff seeking *de novo* review of an administrative determination, the Uptown Fruit Ranch has the burden of showing that the violations of the Food Stamp Act and its implementing regulations did not occur as charged by the FCS. *Goodman v. United States*, 518 F.2d 505, 507 (5th Cir.1975); *Redmond v. United States*, 507 F.2d 1007, 1011–12 (5th Cir.1975); *Sam's Silver, Inc. v. United States*, No. 92 C 7642, 1994 WL 30620, at *1 (N.D.Ill. Jan. 28, 1994).

3. This Court is required to uphold the FCS's administrative determination unless the Uptown Fruit Ranch shows by a preponderance of the evidence that the determination is invalid. *Abdel v. United States*, 670 F.2d 73, 76 n. 8 (7th Cir.1982); *Modica v. United States*, 518 F.2d 374, 376 (5th Cir.1975); *Brooks v. United States Dep't of Agriculture*, 841 F.Supp. 833, 839 (N.D.Ill. 1994), *aff'd*, 64 F.3d 251 (7th Cir.1995); *Barbosa v. United States*, 633 F.Supp. 16, 18 (E.D.Wis.1986).

4. Food Stamp Program trafficking, in this case the purchase of food stamps for a lesser cash value, is a violation of the FCS program and the penalty for a single occasion of trafficking is permanent disqualification of the store from the Food Stamp Program. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. §§ 271.29 and 278.6(e)(1)(i). The FCS cannot impose a civil monetary penalty for trafficking if the store's management was involved in trafficking violations. 7 U.S.C. § 2021(b)(3)(B).

5. The FCS established three separate violations of 7 C.F.R. § 278.2(a) by showing that the Uptown Fruit Ranch employees accepted food stamps on three separate occasions in exchange for cash. *Wehab v. Yeutter*, 743 F.Supp. 1353, 1357 (N.D.Cal. 1990); *Wilson v. United States*, 651 F.Supp. 701, 705 (E.D.Wis.1986).

6. The Uptown Fruit Ranch has not shown by a preponderance of the evidence that Steve Karas, who discounted the food stamps, was not an employee of the store.

7. As detailed herein, the Court finds Michael Floros' testimony inherently incredible and certainly not sufficient to meet the Uptown Fruit Ranch's burden of proof in this case.

8. The trial evidence established that Michael Floros was a member of the Uptown Fruit Ranch's management, as that term is defined in 7 U.S.C. § 2021(b)(3)(B) on December 7, 1995, when he took part in food stamp trafficking by actively participating with Steve Karas in the purchase of $195.00 worth of food stamps for $150.00 from Investigator Gately.

9. The Uptown Fruit Ranch has not shown by a preponderance of the evidence that its store manager, Michael Floros, was not involved in the December 7, 1994, food stamp trafficking transaction.

10. The Uptown Fruit Ranch's mere denial of any wrongdoing is not sufficient to meet its burden of proof. *Wehab v. Yeutter*, 743 F.Supp. 1353, 1357 (N.D.Cal.1990).

11. A store is liable for the acts of its employees, regardless of the owner's noninvolvement. *Wolf v. United States*, 662 F.2d 676, 678 (10th Cir.1981); *Kulkin v. Bergland*, 626 F.2d 181, 183 (1st Cir.1980); *Wilson v. United States*, 651 F.Supp. 701, 705 (E.D.Wis.1986).

12. This Court's review of the FCS's penalty of permanent disqualification has given this Court some pause. This penalty can be seen as unduly harsh because of the fact that the Uptown Fruit Ranch is so heavily reliant upon the Food Stamp Program for its economic existence. The store, however, was given many prior written warnings about the dire consequences of trafficking in food stamp coupons. In addition, this Court takes judicial notice of the huge multi-million dollar cost that is borne by the Food Stamp Program because of fraudulent trafficking. This concern led Congress to enact the 1990 Amendments which mandate permanent disqualification. 7 U.S.C. § 2021(b)(3)(B). Additionally, the FCS's final administrative decision is entitled to deference. *Carlson v. United States*, 879 F.2d 261, 263 (7th Cir. 1989). A penalty may be set aside only if it is "arbitrary and capricious". *Brooks v.*

*United States,* No. 94–1570, Slip. Op. at 8 (7th Cir. August 2, 1995).

13. The Food Stamp Act indicates that a disqualification is permanent upon "the first occasion" of trafficking. 7 U.S.C. § 2021(b)(3)(B). This case involved three separate trafficking violations. Moreover, this statute does not allow the FCS to impose a civil money penalty if management is involved in trafficking, as the Court has found was the case here.

14. After careful consideration of all the relevant factors, regulations and statutory objectives, this Court finds that the Uptown Fruit Ranch has failed to show that the penalty of permanent disqualification from the Food Stamp Program imposed by the FCS was arbitrary and capricious. *Nowicki v. United States,* 536 F.2d 1171, 1178 (7th Cir.1976), *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1103, 51 L.Ed.2d 537 (1977).

### CONCLUSION

Plaintiff Uptown Fruit Ranch failed to establish by a preponderance of evidence that the final administrative decision of the FCS was not supported by substantial evidence or that the FCS's sanction of permanent disqualification was arbitrary and capricious. This Court, after *de novo* review of all the relevant evidence, hereby affirms the FCS's administrative determination that the Uptown Fruit Ranch shall be permanently disqualified from participation in the Food Stamp Program for trafficking in food stamp coupons. This Court hereby dissolves the temporary stay of the final administrative decision as of September 25, 1995. The Court has used this date to allow for an orderly permanent disqualification of the Uptown Fruit Ranch from the Food Stamp Coupon Program. This Court does not believe that a stay of the disqualification order pending any potential appeal of this order is appropriate. The September 25, 1995, disqualification effective date, however, will give the Uptown Fruit Ranch time to seek a stay from the Seventh Circuit Court of Appeals if it believes such a motion is appropriate.

The Clerk of the Court is directed to enter judgment for the defendant United States of America and against plaintiff J & M Food Store, Inc., doing business as the Uptown Fruit Ranch. This case is hereby dismissed with prejudice with the parties to bear their own costs.