**Chang KIM t/a Shipley Market, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 95–1204 (JR).**

United States District Court, District of Columbia.

Sept. 29, 1995.

Anton M. Weiss, Pascal & Weiss, P.C., Washington, DC, for Plaintiffs.

Wyneva Johnson, Assistant U.S. Attorney, Washington, DC, for Defendants.

### *MEMORANDUM*

ROBERTSON, District Judge.

If the Secretary of Agriculture finds that a retail food store has violated provisions of the statute or the regulations establishing and governing the federal food stamp program, the Secretary may (but is not required to) disqualify the food store for a specified period of time from further participation in the food stamp program. If the Secretary determines that disqualification would cause hardship to food stamp households, the Secretary may subject the store to a civil money penalty in lieu of disqualification. 7 U.S.C. § 2021(a). Judicial review is available to a retail food store that has been sanctioned under this provision; the statute provides for a trial *de novo*

> "in which the Court shall determine the validity of the questioned administrative action in issue. If the Court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence."

7 U.S.C. § 2023(a).

USDA investigators paid six visits to the Shipley Market in Southeast Washington,

D.C. between March 16 and July 27, 1994. They were able to purchase non-food items using food stamps on the first four of those six visits, but not on the last two. On February 2, 1995, more than eight months after the last date on which its investigator had exchanged food stamps for ineligible items, USDA notified the Shipley Market that it would be disqualified from the food stamp program for six months. Plaintiffs, the owners of the Shipley Market, sought and received an administrative review. On May 22, 1995, they were told by the USDA's Administrative Review Branch in Dallas, Texas that the disqualification would be sustained. Plaintiffs sought judicial review timely thereafter. On June 27, 1995, I issued an order staying the administrative action and setting the matter down for the *de novo* hearing contemplated by the statute.

At the *de novo* hearing, held on July 24, 1995 the government introduced in evidence the "transaction reports" constituting the investigator's record of her purchases at the Shipley Market, a form report supporting the identification of the plaintiffs and one other as the persons who sold her the ineligible items, and the May 22 letter of the Administrative Review Branch in Texas sustaining the disqualification. Pressed for a statement whether the government's evidence constituted the record on which its administrative determination was based, counsel responded that she was satisfied that the exhibits established the government's case of violation and for disqualification. The government proffered the testimony of the USDA investigator and her superior. Because the substance of the proffer concerned only the identification of persons who made the sales in question, I declined to hear that testimony.

Plaintiff Chang Kim, with the assistance of a Korean language interpreter, testified without contradiction to the effect that about 25 percent of his business is derived from food stamps, that a number of elderly food stamp customers live next door to the Shipley Market, that the closest other market to which such people could go to make food stamp purchases of the variety of food he sells is about half a mile away, that many elderly people wait at his door for him to open his store in the morning, and that in his view those persons would suffer hardship if the disqualification were sustained.

It is undisputed that the Kims have never been charged or sanctioned for food stamp violations before now; that none of the violations in question involve "trafficking" or selling products containing alcohol or tobacco; and that no warning of any kind was given to the Kims before the imposition of the six month disqualification they challenge here.

I find on the basis of the evidence presented that violations of the food stamp statute and regulations occurred as charged: On March 16, 1994, the investigator was able to buy a can of brass polish (an item that is ineligible for purchase with food stamps) together with franks, corn-on-the-cob, applesauce, noodle mix and syrup (items that are eligible for food stamp purchase). On March 23, 1994, the investigator was able to buy hot/cold cups, a mop refill and bowl cleaner (ineligible) along with potatoes, instant potatoes, sausage, chili, fruit cups and greens (eligible). On May 13, 1994, the investigator was able to buy bathroom tissue, coffee pot cleaner and bowl cleaner (ineligible) along with Crisco, pancake mix, rice and broccoli, Spam and seasoning (eligible). On May 24, 1994, the investigator was able to buy rug deodorizer, clothes pins, liquid wax and detergent (ineligible) along with eggs, rolls, spaghetti, Hamburger Helper, sausage, spaghetti sauce and sweet potatoes (eligible).

The USDA's regulations require the regional office making a disqualification or penalty determination to consider

"(1) the nature and scope of the violations committed by personnel of the firm, (2) any prior action taken by FNS [Food and Nutrition Service] to warn the firm about the possibility that violations are occurring, and (3) any other evidence that shows the firm's intent to violate the regulations."

7 C.F.R. § 278.6(d). The government's record covers only the first of those three elements. No prior warnings were given, so obviously there was no consideration given to any such warnings. No evidence was offered or apparently considered on the subject of intent.

The regulations also provide for FNS to "send the firm a warning letter if violations are too limited to warrant a disqualification." 7 C.F.R. § 278.6(e), (f). The government's case made no showing of whether a warning letter was even considered in this case, or of what standard USDA applied to determine whether violations are "too limited to warrant a disqualification."

The regulations further provide certain "criteria for civil money penalties for hardship," 7 C.F.R. § 278.6(e), (f), and specifically permit the imposition of a civil money penalty

"as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

The letter from the Administrative Review Branch in Texas states that "the record in this case shows that there are comparable participating food stores in the trade area served by your clients' firm" and concludes that "disqualification of this firm would not cause hardship to food stamp households in the area." No such record was adduced at the de novo hearing, however, nor did the government's proffer of testimony include anything that would contradict Kim's testimony about the hardships of the Shipley Market's near neighbors. I am left with no indication of how USDA understands or applies its own regulations on this point.

The record does not reflect a firm practice of selling non-eligible items. There was no trafficking and no exchanging food stamps for cash. On the most recent two occasions when the investigator visited the store, her efforts to buy ineligible items were refused.

The Administrative Review Branch letter recites the need for USDA to "enforce ... penalties uniformly on a nationwide basis," but I note, as at least one other court has, that "in many of the reported cases where the store was disqualified for a period of time, FNS had sent as least one warning letter (and in some situations several letters) about possible violations prior to initiating any action. See, e.g., Wehab v. Yeutter, 743 F.Supp. 1353 (N.D.Cal.1990); Wilson v. U.S., 651 F.Supp. 701 (E.D.Wisc.1986)." Pena v. U.S. Department of Agriculture, 811 F.Supp. 419, 426 n. 13 (E.D.Ark.1992). Here, the government has made no effort to explain why FNS did not warn Shipley Market as soon as it made one or two purchases of ineligible items but rather proceeded to build a case.[1]

On this record, I find USDA's imposition of the sanction of disqualification for these violations arbitrary and capricious. The sanction of disqualification is set aside and the matter remanded to the agency for reconsideration in light of this opinion.

This opinion is issued to complete and clarify my ruling made at the close of the de novo hearing. The points and authorities presented by counsel in their post-hearing memoranda have been taken into consideration.

An appropriate order will issue.

### ORDER

For the reasons stated in the Court's memorandum issued today, it is this 29th day of September 1995 ORDERED that the sanction of disqualification from the food stamp program imposed by defendants upon plaintiffs be and the same is hereby set aside and the matter remanded to the United States Department of Agriculture. The Court will retain jurisdiction for a period of 180 days from the date of this order. If no further motion is presented to the Court within that time, the clerk is ordered to dismiss the case as moot.

---

1. Plaintiff points out, in a post-hearing memorandum, that the FNS Handbook provides for the issuance of a warning letter where the investigation discloses only a few sales of common ineligible items. That handbook is not of record, however and I have not relied upon it.